### MANSFIELD et al. v. ORANGE INV. CO.
#### (No. 1085.)

(Court of Civil Appeals of Texas. Beaumont. March 26, 1924. Rehearing Denied April 9, 1924.)

1. **Homestead 112—Deed and contract to reconvey held not void as a pretended mortgage of homestead.**

Deed of a husband and wife, and lease to them by grantees with privilege to purchase within five years at a named price, but not obliging them to repurchase, did not show as a matter of law a pretended sale of a homestead void under Const. art. 16, § 50.

2. **Trial 194(9), 242, 244(3)—Charge held not misleading nor on weight of evidence nor erroneous giving contention undue prominence.**

Where the effect of a deed and grantee's lease of the property to grantors giving them right to repurchase within a named period was for jury, a charge that the papers evidenced a sale of the property and an agreement whereby grantors were permitted to occupy and pay rent and have the right to purchase it back *held* not on weight of the evidence nor misleading nor giving defendant's contention undue prominence.

Appeal from District Court, Orange County; A. D. Lipscomb, Judge.

Action by Melina Mansfield and husband against the Orange Investment Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Howth & O'Fiel, of Beaumont, for appellants.

Holland & Holland, of Orange, for appellee.

WALKER, J. This suit was instituted by appellants, Melina Mansfield and her husband, B. F. Mansfield, against the Orange Investment Company, a corporation, to cancel an instrument in the form of a warranty deed, but which they insisted was a mortgage, by the terms of which they had conveyed their homestead to the Orange Investment Company on a recited consideration of $5,000. The facts show that B. F. Mansfield was indebted to the First National Bank of Orange in the sum of about $3,500, $1,250 of which was secured by a mortgage on certain hogs, and the balance was unsecured. The bank was insisting on the payment of its debt, and the Mansfields' home was all the property owned by him at that time. Something was said by the bank and Mansfield and his father about the bank buying this home or taking a mortgage on it, but on the excuse that it could not handle real estate the bank declined to make any trade with Mansfield involving his home. However, the president of the bank suggested that the Orange Investment Company might be induced to handle the deal, and when the matter was presented to this company it did agree to handle the deal by paying to appellant $5,000 in cash for his home and executing to Mansfield a contract to reconvey. The deed from Mansfield and his wife to the Orange Investment Company was dated the 28th day of July, 1922. On the same day the Orange Investment Company made and entered into a lease contract with Mansfield, quoting from appellants' brief:

"Whereby the said identical two tracts of land were leased to him for a term of five years, and among the several provisions in said purported lease contract is the following: 'It is further agreed that the said B. F. Mansfield of the second part is to have the privilege of purchasing said property any time within five years above mentioned at the agreed price of $5,000.00.'

"And among the said lease provisions was the following: 'If the amount of $2,000.00 has been paid (over and above the amount specified as rent) at the expiration of said five years above mentioned, or any amount over that amount, the party of the first part obligates itself to execute a deed in favor of B. F. Mansfield, or his assigns, reciting in said deed the amount that has been paid, and retaining a vendor's lien for the amount unpaid, and the said B. F. Mansfield agrees to execute vendor's lien notes for the unpaid part of the purchase money.'

"And it was further provided therein:

"'Should the said B. F. Mansfield tender to the said Orange Investment Company, Inc., of

Orange, Tex., the sum of $5,000.00 any time within the five years above mentioned, the party of the first part agrees to immediately execute its deed for the above-mentioned property free from any incumbrances.' "

The oral evidence offered by Mansfield and wife tended to show that this transaction was intended by the parties as a mortgage, while the oral evidence offered by the Orange Investment Company tended to show that the transaction was an absolute conveyance. The issue thus raised by the evidence was submitted to the jury under the following charge, omitting formal parts:

"Gentlemen of the Jury: Being requested to submit this cause to you on special issue I submit the following:

"(1) The two papers executed by the parties evidence a sale of the property to the investment company, an agreement whereby the plaintiffs were permitted to occupy the property and pay rent thereon and have the right to purchase the property back for $5,-000 at any time on payment of rentals up to date of purchase. The plaintiffs assert· that this transaction was not real but pretended and that the intention of the parties was to secure an indebtedness of five thousand dollars. You will therefore answer whether the transaction evidenced by the two papers was a real sale or intended as a mortgage to secure indebtedness. Answer 'Real' or 'Intended as a mortgage.'

"The burden of proof rests on the plaintiffs to establish the material facts charged in the petition by a preponderance of the evidence. You are the exclusive judges of the facts proven, the weight to be given to the evidence, and the credibility of the witness, and that your findings should be. supported by a preponderance of the evidence on the various questions. Let your answers be in writing, and signed by your foreman whom you will select."

The jury's verdict was as follows:

"We, the jury, in the case of Melina Mansfield et vir, No.. 4771, vs. The Orange Investment Company, in the District Court of Orange County, Texas, after due deliberation and consideration of the evidence as we see it, find the following: The transaction was a 'real sale.' "

[1] Appellants' first proposition is that as a matter of law, under the evidence introduced, the transaction was shown to be a mortgage on a homestead, and hence void. We must overrule this contention. As already stated, the oral evidence was sufficient to raise the issue submitted to the jury in favor of appellee. The written instruments do not show as a matter of law that the transaction was a mortgage. The Constitution provides:

"All pretended sales of the homestead involving any condition of defeasance. shall be void." Article 16, § 50.

In Astugueville v. Loustaunau, 61 Tex. 233, constructing this section, our Supreme Court said:

"Under this clause of the Constitution, it is not every sale of the homestead involving a condition of defeasance which it declares shall be void; but it declares that all pretended sales involving such conditions shall be void."

Citing that case, and again discussing the Constitution, our Supreme Court said in Hardie v. Campbell, 63 Tex. 295:

"If it was intended by the parties that the title should vest in appellants by reason of the conveyance, but subject to be divested within the designated time by Campbell paying to appellants the specified amount, then such transaction would amount to a sale, as contradistinguished from a pretended sale."

In construing these two instruments, we must review them in the light of the facts under which they were executed and give them that construction intended by the parties at the time of their execution. Again quoting Hardie v. Campbell:

"When it is claimed that such a conveyance was in fact intended as a mortgage the usual test applied is this: Was the relation of creditor and debtor terminated by the transaction? If so, it is not a mortgage; but if the debt subsists, and that relation exists as well after as before the transaction, then the instrument will be considered as a mortgage.

"In the case of Loving v. Milliken, 59 Tex. 425, Chief Justice Willie enumerates the circumstances from which courts of equity usually deduce the conclusion that a deed, though absolute in form, is in effect a mortgage. And while some of these are shown to exist in this case, there are other circumstances disclosed by the record which tend to establish the other conclusion, and which it is deemed proper here to notice, as they ought to be considered upon another trial.

"As heretofore remarked, the true test is the existence or nonexistence of the relation of debtor and creditor, as between Campbell and appellants, after the execution of the deed. If, by the execution and delivery of the deed and the receipt of the balance of the $7,000 by Campbell, the relation of debtor and creditor theretofore existing between them was terminated, that is, after that transaction appellants held no debt against Campbell, then the conveyance would be valid. But if the relation of debtor and creditor as between these parties continued after the execution and delivery of the conveyance, then it will be considered a pretended sale involving a defeasance, and therefore invalid so far as it affects or seeks to affect the title to the homestead."

The facts in this case show that the relation of debtor and creditor never existed between appellants and appellees, and, while the relation between the First National Bank and the Orange Investment Company was very close, because of the interlocking of its officers, yet they were separate and distinct entities. No obligation existed on the part of appellants to repay the $5,000. Appellants were to pay rent on the premises, if occupied by them. Appellee actually paid to appellants $5,000 in cash. No showing was made in the trial court, nor is the sug-

gestion advanced here, that this $5,000 was not the reasonable market value of the property. Such a showing in favor of appellants would have been so weighty in their interest that no inference can arise that it was omitted from the record by an oversight.

In discussing the weight of circumstances just mentioned on the issue of sale, it is said in 24 R. C. L. 443:

"The adequacy of the price is a material consideration in determining to which class the transaction belongs. If there is no great discrepancy between the price and the value of the property this is a material consideration for upholding the transaction as a sale with the right merely to repurchase; on the other hand, if there is a great disparity in this respect, this is a material consideration tending to show that the intention of the parties was to give a mortgage as security, for, although inequality of value is not, of itself, a sufficient cause to set aside a sale, yet it is a circumstance deservedly entitled to great weight in discovering the intention of the parties in a doubtful case, as to the true nature of the contract. The absence of any obligation on the part of the transferor to repay the price, he being given the option merely of refunding and demanding a retransfer, is a material reason for considering the transaction a sale with the right of repurchase and not a mortgage; but this does not, according to the better view, preclude the transaction, if intended as security merely for a loan, from being so treated. Where the seller remains bound for the repayment of the money advanced this is an incident, in doubtful cases, strongly tending to show that a mortgage only was intended. Where the transaction has its origin in a borrowing of money this also tends to show that the subsequent transaction, though in the form of an absolute sale with the right of repurchase, was in fact intended as a mortgage. The fact that the risk of loss in case of the destruction of the property transferred is upon the transferee without right of recourse against the transferor is a consideration strongly tending to show that the transaction was intended as a sale with the mere right of repurchase. In case of a bill of sale absolute on its face, it is well settled that oral evidence is admissible to show that it was intended as a mortgage, and where this is clearly proven it will be so treated by courts of equity. The retention of the possession by the seller will not necessarily change the character of the transaction from one of conditional sale into a mortgage."

Again, it is said in 24 R. C. L. 442:

"The chief criterion for determining to which class of cases the transaction in question belongs is the intention of the parties."

In this case the intention of the parties was an issue of fact, and the verdict of the jury has support in the evidence.

[2] The charge of the court was not on the weight of the evidence. Nothing said by the court could have misled the jury or have given the contention of appellee undue prominence. The effect of the two instruments mentioned by the court was for the jury, and the court's statement of the respective positions of the two parties was not subject to objection.

Appellants present many other propositions relating to the exclusion of evidence and of rulings of the court in the trial of the case, but as these are not brought forward by proper bills of exception they cannot be reviewed.

Appellants also complain that the jury as a whole were biased against them, and on this issue have brought forward in the transcript a long examination of the jurors, but the evidence is not certified to by the stenographer nor agreed to by the parties nor approved by the court. No error is shown in relation to any of the matters complained of.

The judgment of the trial court is therefore in all things affirmed.