RED RIVER NAT. BANK IN CLARKSVILLE, TEX., v. LATIMER et al.

No. 5067.

Court of Civil Appeals of Texas. Texarkana.

Oct. 15, 1937.

Rehearing Denied Oct. 28, 1937.

A. L. Robbins, of Clarksville, Wm. Hodges, of Texarkana, and R. T. Bailey, of Dallas, for plaintiff in error.

Moore, Moore & Myers, of Paris, and B. F. Edwards, of Clarksville, for defendants in error.

JOHNSON, Chief Justice.

The defendant in error, Mrs. Alvis Latimer, is the widow of D. C. (Dan) Latimer, who died in March, 1931. Mr. and Mrs. Latimer owned and occupied as their homestead, for more than twenty years continuously prior to his death, approximately 160 acres of land located in the Vesey community, about eleven miles northeast of Clarksville, in Red River county. They owned other lands not connected with this 160 acres. The two acres of land involved in this lawsuit was a part of the 160-acre homestead tract. Situated on the two acres here involved, Latimers owned and operated a general merchandise store, sawmill, planer, and cotton gin, including the machinery and fixtures connected therewith, and other improvements. In the fall of 1930, Mr. Latimer owed plaintiff in error, the Red River National Bank in Clarksville, about $11,000. The indebtedness was secured by a deed of trust on 600 acres of land and a chattel mortgage on certain personal property owned by Latimer, including his crops grown in 1930. He was also indebted to other creditors. The indebtedness was due. One of his creditors, the Paris Grocery Company, was preparing to attach his property. A meeting of his creditors was had, at which meeting Latimer was present and stated to them, in substance, that he could not then and did not know when he could pay his indebtedness. Shortly after this meeting an agreement or trade was entered into between Latimer and his son-in-law, W. A. Whiteman. This trade was submitted to and approved by Latimer's creditors, including the bank. The terms of the trade were, in substance, that Latimer would convey to the bank said 600-acre tract of land, in satisfaction of all his indebtedness to the bank, except $4,000; that Latimer would then convey to Whiteman the two acres of land above mentioned including the store, cotton gin, sawmill, and other machinery, fixtures, and improvements thereon, also the stock of merchandise and certain other personal property belonging to Latimer; that in consideration of the conveyance by Latimer of said property to him, Whiteman would assume payment of all Latimer's indebtedness owing to Latimer's creditors, which included the remaining $4,000 due the bank. Whiteman's assumption of the payment of Latimer's indebtedness should be accepted by his creditors and Latimer released from further liability therefor. As a part of the agreement it was understood that the $4,000 remaining due the bank should be secured by a deed of trust from Whiteman to the bank covering the two acres of land, fixtures, and improvements above mentioned. About two or three days after the trade between Latimer and Whiteman was agreed to by Latimer's creditors, Latimer and wife on October 27, 1930, executed and delivered to Whiteman a general warranty deed conveying to Whiteman said two acres of land. On the following day, Latimer and wife conveyed to the bank the 600-acre tract of land in consideration of the cancellation of all Latimer's indebtedness to the bank, except $4,000. On the same day, October 28, 1930, Latimer executed and delivered to Whiteman a bill of sale to certain personal property. The store, gin, and sawmill, and other property situated on the two acres of land, were also described in the bill of sale. Thereupon, Whiteman and wife, Mary Whiteman, October 28, 1930, executed and delivered to the bank their two promissory notes payable to the order of the bank, each in the sum of $2,000, bearing 10 per cent. interest per annum from date until paid, due January 1, 1931, and October 1, 1931, respectively. To secure the payment of their said notes Whiteman and wife executed and delivered to the bank a deed of trust on the two acres of land above mentioned. In accordance with its agreement to do so, the bank accepted Whiteman's said notes and deed of trust in full payment and satisfaction of Latimer's indebtedness to it, canceled Latimer's notes, and delivered them to Latimer. Whiteman then paid the Paris Grocery Company $350 on its account against Latimer, and gave his, Whiteman's, note for the balance. To the other creditors Whiteman gave his notes in satisfaction of Latimer's notes. The deed from Latimer and wife to Whiteman and the deed of trust from Whiteman and wife to the bank were duly filed for record October 28, 1930. At this time, and for a number of years prior, Whiteman owned and operated a general merchandise store at Whiteman's Chapel, about three miles northeast of Clarksville in Red River county.

Whiteman's testimony is to the effect that he took possession, management, and

control of the property conveyed to him by the Latimers; that he purchased merchandise from wholesale houses and placed in the store. Mrs. Latimer's testimony is to the effect that the business was continued to be operated by her husband, just as he had always done, until his death.

Whiteman made certain payments on his notes which he had executed in assumption of Latimer's indebtedness. He paid the bank $1,669.94. July 30, 1931, Mrs. Alvis Latimer filed suit in the district court of Red River county against Mr. and Mrs. Whiteman for recovery of the property conveyed to Whiteman by the Latimers, and prayed for the appointment of a receiver, cause No. 16891. The receivership was granted and Coleman Chapman was appointed receiver. The bank filed suit and recovered judgment against Whiteman and wife for the balance due on their notes, principal, interest, and attorney fees, amounting to $3,082.26, and a foreclosure of its deed of trust on the two acres of land, cause No. 17042. In February, 1932, the receiver, Coleman Chapman, joined by Mrs. Alvis Latimer and her daughter Mrs. Craig Hancock, filed suit against the bank, and the sheriff of Red River county, and Whiteman and wife, in which suit plaintiffs sought and obtained a temporary injunction restraining execution of the bank's judgment against the Whitemans, cause No. 17089. In December, 1934, causes No. 16891 and No. 17089 were consolidated. By her amended petition on which she went to trial in the consolidated cause, Mrs. Alvis Latimer, suing as surviving widow of D. C. Latimer and as temporary administratrix of the estate of D. C. Latimer, deceased, among other things sought judgment declaring null and void the deed executed by her and her husband to W. A. Whiteman and the deed of trust executed by Whiteman and wife to the bank, on the alleged ground that the deed was to a portion of her homestead, and though an absolute conveyance in form was intended as a mortgage or pretended sale involving a condition of defeasance, in violation of the Constitution, and void. She further alleged that the bank through its agent, C. C. Canterbury, had notice of the intended purpose of said deed at the time it acquired the deed of trust from Whiteman and wife. In its answer, among other things, and in addition to its general and special denial, the bank pleaded that it had in good faith acquired the deed of trust, for a valuable consideration, and without knowledge or notice of the alleged facts upon which plaintiff sought to have the deed from Latimer and wife to Whiteman declared invalid, or that it had any notice that said deed was intended otherwise than as its terms purported, an absolute conveyance of the fee-simple title, and that by reason of the bank being a bona fide purchaser from her vendee, Whiteman, whom she had so clothed with apparent title, Mrs. Latimer was estopped to deny the validity of her deed to Whiteman.

Trial was had to a jury. At the close of the evidence the jury was peremptorily instructed to return a verdict for Mrs. Latimer, and judgment was entered declaring the deed from Mr. and Mrs. Latimer to Whiteman and the deed of trust from Whiteman and wife to the bank void, and awarding to Mrs. Latimer recovery of the title and possession of the two acres of land described in the instruments. The bank has appealed the cause to this court by way of writ of error.

By appropriate assignments of error the bank challenges the action of the trial court in peremptorily instructing a verdict in favor of Mrs. Latimer. Its first contention is to the effect that the trial court erred in withdrawing the issue from the jury and holding that the evidence established as a matter of law that the deed from Mr. and Mrs. Latimer to Whiteman was intended as a mortgage or as a pretended sale involving a condition of defeasance. The contention is sustained. Other than by inference from the facts above stated, the only testimony raising the issue that the deed was intended otherwise than as a bona fide conveyance is the following testimony of Mrs. Latimer and of Mr. Whiteman. Mrs. Latimer testified:

"Q. What did Mr. Canterbury or Mr. Whiteman, either one or both of them, say to you before you signed that deed? A. It was Mr. Whiteman; he told me they wanted me to sign this in order to keep Mrs. Watson, my daughter, from interfering with that business.

"Q. Did he say anything about the bank in connection with it? Any indebtedness to the bank? A. Well, at one time they did.

"Q. What did they say? A. They said when these obligations * * *

"Q. Was Mr. Canterbury present when that statement was made? A. He and Mr. Canterbury were together when I signed the deed.

"Q. What did either one of them say at that time about the bank? A. They said when these obligations were settled the land and everything would come back to us.

"Q. You mean by that the obligations at the bank, that your husband owed to the bank? A. Yes, sir.

"Q. Did you know at that time about how much Mr. Latimer owed the bank? A. Yes, sir.

"Q. About how much? A. Around $4,000.00."

Mr. Whiteman testified:

"Q. At any time, in talking to the bank, did you ever mention to them that there was any agreement between you and Mr. Latimer by the terms of which that whenever this indebtedness was worked out you would convey it back to them? A. I did not, because that was not mentioned until later.

"Q. When was there ever any statement made as to any reconveyance of this property? A. That was the day they signed the deed, and it was between Mrs. Latimer and Mr. Latimer and myself. We went upstairs and no one heard that but us three.

"Q. You and Mr. and Mrs. Latimer went upstairs and discussed it among yourselves? A. Yes, sir.

"Q. Was Mr. Canterbury there? A. No, sir.

"Q. Was there anybody other than you three that heard that conversation? A. That's all.

"Q. Did you go back and tell any of these creditors, or the bank, anything to that effect? A. No, sir."

Mr. Whiteman further testified that the consideration which he paid for the property conveyed to him by the deed was his assumption of the payment of all of Latimer's indebtedness, "that is, the amount that was left after the land (600 acres) was turned in, which would be about $4,000, and take up all the outstanding debts * * * and that he thought he was getting good title to the land."

The conversation between Whiteman and Mr. and Mrs. Latimer in which Whiteman promised, or expressed his intention, to reconvey the land to them as soon as he had paid off the debts which he had assumed, occurred before Mrs. Latimer signed and acknowledged the deed, but it occurred after the trade had been consummated between Latimer and Whiteman and had been agreed to by Latimer's creditors. It does not appear, except as an inference to be drawn from the testimony, that Whiteman's promise to reconvey the property was any part of the consideration for or that it operated to induce execution of the deed. That Whiteman's promise may have been a gratuitous one is warranted by the circumstances in evidence. There does not appear to have been any promise or understanding that Latimer would ever repay or be obligated to refund to Whiteman the money expended by Whiteman in paying the debts. And the conclusion is not without support in the evidence that the trade between the Latimers was a bona fide transaction intending to convey fee-simple title to Whiteman in consideration of his assumption of Latimer's indebtedness in such manner as to substitute Whiteman as the sole debtor, making them Whiteman's debts, and completely releasing Latimer from any further liability therefor, either to Whiteman or to the creditors. In such circumstances, Whiteman's contemporaneous promise to reconvey the property to the Latimers when he had paid off the debts which he had so assumed would not have the effect to constitute the deed a mortgage, for lack of the essential element of a debt left owing by Latimer, the alleged mortgagor, to be secured by the deed. "It is settled law that, in order to constitute a mortgage, there must be a debt to be secured," Eckford v. Berry, 87 Tex. 415, 28 S.W. 937, quoting from Hubby v. Harris, 68 Tex. 91, 3 S.W. 558.

"However great may have been the disposition manifested sometimes by courts to construe all agreements, coupled with a stipulation for a re-conveyance upon payment by a future day, as mortgages, it is now well settled, that the power of individuals capable of acting for themselves to make such contracts cannot be denied. And when the facts show that this is the character of their agreement, it must be upheld and enforced as readily as any other contract. (Conway v. Alexander, 7 Cranch 218 [3 L.Ed. 321]). Nor does the fact that there was an existing debt at the date of the contract repel the presumption which may arise from other facts that the con-

tract was a conditional sale. The question in such case is, was the old debt surrendered or cancelled at the time of the conveyance?" Ruffier v. Womack, 30 Tex. 332.

■ If, as further contended by defendant in error, it was a pretended sale and the deed was intended to only simulate a conveyance to Whiteman in order that Whiteman might execute a deed of trust on the property to the bank, whether the debts be regarded as Latimer's or as Whiteman's debts, the transaction would violate the provisions of the Constitution protecting the homestead against a pretended sale involving a condition of defeasance. Constitution, art. 16, § 50. But the fact that it was understood between all the parties that Whiteman, after he purchased and acquired title to the property, would then in turn mortgage it as security for his debt which he had so obligated himself to pay the bank; and the fact that Whiteman promised the Latimers to reconvey the property to them when he had paid off said debts, do not of themselves violate the Constitution. They are strong probative circumstances, but do not as a matter of law conclude the issue of fact as to whether or not the deed was only a pretended sale, not intending to pass title to Whiteman. The Constitution does not declare every sale of the homestead involving a condition of defeasance void, but only pretended sales involving such conditions are declared void. 22 Tex.Jur. 158 § 110. And the issue is one of fact. Mansfield v. Orange Investment Co. (Tex.Civ.App.) 260 S.W. 307.

■ The bank further contends that there was error in directing a verdict against it, in that it is contended there was evidence raising the issues of fact which should have been submitted to the jury, supporting its plea of a bona fide purchaser from the vendee of the homestead claimant, Mrs. Latimer, by reason of which she was estopped to deny genuineness of the apparent fee-simple title with which she had clothed such vendee. We sustain this contention. It appears to be the law that a homestead claimant is estopped to assert the invalidity of her purported absolute deed of conveyance, as against a bona fide purchaser or lienholder from such homestead claimant's vendee in which she has apparently vested title, that is, as against a purchaser (1) in good faith, (2) for a valuable consideration, and (3) without any notice of the facts invalidating the homestead claimant's deed. Guaranty Bond State

Bank v. Kelly (Tex.Com.App.) 13 S.W. (2d) 69; Graves v. Kinney, 95 Tex. 210, 66 S.W. 293; Wood v. Eastland B. & L. Ass'n (Tex.Civ.App.) 75 S.W.(2d) 466; Nat. Bond & Mortg. Corp. v. Davis (Tex.Com. App.) 60 S.W.(2d) 429; Barron v. Theophilakos (Tex.Civ.App.) 13 S.W.(2d) 739; Eylar v. Eylar, 60 Tex. 315; 22 Tex.Jur. 162, § 113.

We do not find any circumstances in the record from which it may be inferred that the bank acted otherwise than in good faith, or that it had notice of any fact that would tend to impair the validity of the deed which the Latimers executed and delivered to Whiteman, unless it be that its employee, Canterbury, was present and heard the conversation in which Whiteman promised the Latimers to reconvey the land to them when he had paid the debts. Mrs. Latimer testified that Canterbury was present on that occasion. Her testimony is disputed by both Canterbury and by Whiteman. This conflict of testimony on the issue of notice was a matter for the jury to determine.

■ Payment of a "valuable consideration" is one of the three essentials to constitute a bona fide purchase. The defendant in error contends that the consideration paid by the bank for the deed of trust lien was the cancellation of a pre-existing debt, in law held not to be a valuable consideration sufficient to support the plea of bona fide purchaser. Cancellation of an antecedent debt owing by the grantor or mortgagor to the purchaser or mortgagee is not in law deemed a valuable consideration sufficient to protect such grantee or mortgagee as a bona fide purchaser. Swann v. Rotan State Bank, 115 Tex. 425, 282 S.W. 789. The reason generally advanced for this rule is that the creditor purchasing from his debtor, and as the sole consideration therefor surrenders the old debt owing him by such debtor, divests himself of no right, in that if the title fails he still has his debt against his debtor, and is left in no worse condition than before the purchase. McKamey v. Thorp, 61 Tex. 648. But the requirement of a valuable consideration is met when it appears that the purchaser would be left in a worse condition than before he purchased, as where he has parted with some valuable right. 66 Cor.Jur. 1107, § 931.

■ In accepting Whiteman's assumption in satisfaction and payment of Latimer's indebtedness and releasing Latimer,

238

the bank lost its chattel mortgage security above mentioned which it held against Latimer. In giving up this security the bank parted with a valuable right sufficient to satisfy the requirement of a valuable consideration. Tobin v. Benson (Tex.Civ.App.) 152 S.W. 642; 43 Tex.Jur. 636, § 377; Western Grocer Co. v. Alleman, 81 Kan. 543, 106 P. 460, 27 L.R.A.(N.S.) 620, 135 Am.St.Rep. 398; L.R.A.1918D, p. 568; 66 Cor.Jur. 1107, § 931.

■ It further appears that in accepting Whiteman's notes and releasing Latimer an extension of time of payment was granted and the indebtedness divided into two notes of $2,000 each, due January 1, 1931, and October 1, 1931, each bearing interest from date at the rate of 10 per cent. per annum until paid. It is held that such extension of the time of payment of an antecedent debt is a valuable consideration sufficient to protect the mortgagee as a bona fide purchaser. Watts v. Corner, 8 Tex. Civ.App. 588, 27 S.W. 1087; Halbert v. Paddleford (Tex.Civ.App.) 33 S.W. 592; Steffian v. Milmo Nat. Bank, 69 Tex. 513, 517, 6 S.W. 823; Farmers' Nat. Bank v. James, 13 Tex.Civ.App. 550, 36 S.W. 288; Barnes v. Gray, 14 Tex.Civ.App. 439, 37 S.W. 162; Ridgill v. Wilson Hdw. Co. (Tex.Civ.App.) 178 S.W. 668; Johnson v. Masterson (Tex.Civ.App.) 193 S.W. 201; Watson v. Paddleford & Son (Tex.Civ. App.) 220 S.W. 779.

There is another and most important reason why the facts of this case do not come within the antecedent debt rule. The bank did not purchase from Latimer, the debtor. It purchased from Latimer's vendee, Whiteman. The consideration paid by the bank for the deed of trust from Whiteman was the cancellation and surrender of its claim against Latimer. It did not surrender a debt owing by its mortgagor, Whiteman. Latimer was in the position of a third party in respect to the bank's purchase of the deed of trust from Whiteman. The surrender by the purchaser or mortgagee of his claim against a third party is deemed a valuable consideration sufficient to support a bona fide purchaser. Smith v. Westall, 76 Tex. 509, 13 S.W. 540; Swenson v. Seale (Tex.Civ.App.) 28 S.W. 143; Knox v. Gruhlkey (Tex.Civ.App.) 192 S.W. 334; Alstin's Ex'r v. Cundiff, 52 Tex. 453; Tobin v. Benson (Tex. Civ.App.) 152 S.W. 642; Dunlap v. Green (C.C.A.) 60 F. 242, 249. In Smith v. Westall, supra, the consideration was, as in this case, the surrender of a claim against a third party. We quote from the opinion: "It is insisted by appellant that Rowe was not an innocent purchaser, because the consideration paid by him was an antecedent debt. The fact stated is true, that the consideration was a debt due to Rowe; but it was not a debt due by Westall, but a debt due by one Bates to Rowe,—Bates at the same time surrendering to Westall a claim against him for the same amount, $500. We think that this was a valuable consideration, and one that will support the plea of innocent purchaser. Bates gave Rowe no guaranty; was in no way responsible to him if the title failed, or the interests in the estates purchased proved to be of no value. Rowe surrendered a valuable right, was in a worse position than before, and therefore entitled to protection as an innocent purchaser having no notice of the former conveyance to Masterson. Paddon v. Taylor, 44 N.Y. 371; Ayres v. Duprey, 27 Tex. 593, 607 [86 Am.Dec. 657]."

■ The transaction by which Whiteman assumed Latimer's debts, with the consent of Latimer's creditors, and Latimer's release therefrom, was consummated in such a manner as constituted a complete novation. It substituted a new debt for the old one surrendered, and a new debtor for the old one released. 31 Tex.Jur. 384, § 2, p. 394, § 8. In such circumstances failure of title to the deed of trust which Whiteman gave to the bank to secure payment of his notes would not restore the bank's debt against Latimer, the old debtor. Thus it is seen that the bank upon failure of title to the deed of trust would lose a valuable right, its claim against Latimer. This, according to all the authorities, entitles the purchaser to the protection of having paid a valuable consideration. 66 C.J. 1107, § 931.

■ Defendant in error, Mrs. Latimer, contends that the deed from Latimer and wife to Whiteman and the subsequent deed of trust from Whiteman and wife to the bank are void because the notary public, C. C. Canterbury, who took the acknowledgments of the grantors to said instruments, was a salaried employee of the bank; and, it is contended, acted as agent for the bank in bringing about or procuring the making of the agreement which the instruments represent. We are unable to sustain this contention. It appears that at the time in question C. C. Canterbury was merely an employee of the bank, termed a "field man," whose duties consisted in look-

ing after the bank's farm lands and in taking care of its live stock. It does not appear that he did or said anything toward making or bringing about the agreement resulting in the execution of the deed or the deed of trust in question. On the other hand, it appears that the agreement was one arranged between Latimer and Whiteman and by them first proposed to A. D. Simpson, the active vice president of the bank, and by Simpson presented to the officials of the bank, and later agreed to by Latimer's creditors, including the bank; that after the trade had been made between Latimer and Whiteman and agreed to by Latimer's creditors, Canterbury was informed of the settlement by Simpson, in the presence of Whiteman and Latimer; that at this time Latimer requested Canterbury to come out to Latimer's house and measure off the land and fix up the papers; that in response to this request Canterbury did measure off the land under the direction of Latimer, and then prepared the deed and took the acknowledgments. It does not appear that Canterbury will be affected by, or that he is in any way interested in upholding, the instruments. In such circumstances, we do not think that Canterbury was disqualified to take the acknowledgments. 1 Tex.Jur. 445, § 36 and § 37.

The judgment of the trial court is reversed and the cause is remanded.