United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 4, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50448

_____

In The Matter Of: ROBERT D. PERRY,

Debtor

- - - - - - - - - - - -

ROBERT D. PERRY,

Appellee,

v.

DENNIE DEARING; ELLEN DEARING;
THE BANK AND TRUST, SSB, formerly
Del Rio Bank and Trust Company,

Appellants.

_____

Appeal from the United States District Court
for the Western District of Texas, San Antonio

_____

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This factually complex bankruptcy case asks us to determine whether a debtor is entitled to exempt from claims of creditors approximately 85 acres of rural property upon which he lives and operates a mobile home park, by claiming it as his rural homestead.

## I.  Background

In 1980, Robert Perry, and his wife Estella,[1] purchased an approximately 26-acre tract of land six miles outside of Del Rio, Texas.  The Perrys operate a mobile home and RV park on the property, and have lived behind the park's office and convenience store on a 1.34 acre plot within the 26-acre tract ever since.[2] They subsequently purchased an approximately 59-acre tract of land that directly adjoins the 26-acre tract.  The 59-acre tract contains a sewage treatment plant and recreation facilities, all used in conjunction with the park.

In October 1985, Perry incorporated his business as American Campgrounds, Inc. ("the Corporation").  On December 5, 1985, in exchange for all of the stock in the Corporation,[3] Perry executed a general warranty deed recorded in the Val Verde County deed records conveying the 26-acre tract to the Corporation.  The Corporation, with Perry as President, then applied for a $127,000

---

[1]Perry's wife is not a party to this suit.

[2]Specifically, the 26-acre tract is composed of: (1) a 23.66 acre tract on which there are numerous mobile home sites, overnight RV sites, and crude cabins; (2) a 1 acre tract on which there is a waste treatment site to support the campgrounds; (3) a 1.34 acre tract where Perry lives and on which there is an office and convenience store to support the campground business; and (4) a 20 ft. strip of land used to access the other tracts.

[3]The district court implied that Perry received no consideration for the transaction.  To the extent that Perry received all of the shares of the Corporation, whose primary asset was the 26-acre tract, the district court erred.

loan from The Bank and Trust, S.S.B. ("the Bank"), formerly Del Rio Bank and Trust Co. The loan was approved and secured by a lien on the 26-acre tract. Proceeds from the loan were used, in part, to pay off a $44,000 unsecured line of credit that Perry had previously received from the Bank in his individual capacity.[4] In 1989, Perry, in his capacity as the Corporation's president, signed an agreement with the Bank reaffirming the $127,000 loan.

On June 29, 1993, the Perrys individually refinanced the Corporation's loan for $178,000. The new loan, which was in the Perrys' names, was also secured by the 26-acre tract. No deed had reconveyed the property to the Perrys from the Corporation. Instead, Perry and his wife executed an affidavit declaring that American Campgrounds, Inc., their wholly owned corporation, was defunct, and that they had personally assumed all of the Corporation's assets and liabilities. The proceeds of the loan were used, in part, to pay off the Corporation's 1985 loan from the Bank. Three years later, in May 1996, Perry and his wife filed a homestead designation for the 26-acre tract, claiming the property as their homestead.

On March 21, 2000, Perry filed for bankruptcy under Chapter 7. On May 1, 2000, Perry, electing the state exemption scheme authorized in the Bankruptcy Code, claimed a rural homestead

---

[4]The proceeds were also used to extinguish a mortgage on the 26-acre tract and to pay taxes and closing costs.

3

exemption for both the 26-acre and the 59-acre tracts.[5]

Dennie and Ellen Dearing ("the Dearings") are judgment creditors of Perry. In December 1996, the Dearings obtained a judgment of approximately $300,000 against Perry for breach of contract. The Dearings timely objected to Perry's homestead designation on May 19, 2000, on the grounds that the Corporation owns the 26-acre tract. The bankruptcy court held a hearing on the objection on September 18 and 19, 2000. At this time, the Bank had not filed an objection and did not participate in the hearing. The court, however, recognized that if it found the Perrys' conveyance of the 26-acre tract to the Corporation void, the validity of the Bank's lien on the property might be called into doubt. Consequently, the court ordered that the Bank be given notice of the proceedings and an opportunity to respond. On October 25, 2000, the Bank filed what it labeled its "objections" to Perry's claimed homestead exemption. The court heard the testimony of two witnesses of the Bank on January 10, 2001.

At the conclusion of the second hearing, the court found that the 1985 conveyance had validly transferred title to the 26-

---

[5]Texas permits a debtor in bankruptcy proceedings to choose between the "federal" and "state" exemption scheme. *In re Bradley*, 960 F.2d 502, 506 n.2 (5th Cir. 1992). Election of the state exemption scheme permits the debtor to claim the general exemptions contained in the Texas Property Code, while election of the federal scheme relegates the debtor to the exemptions specified in § 522(d) of the Bankruptcy Code. *Id.*

4

acre tract to the Corporation, and took other issues under advisement.  On April 12, 2001, the bankruptcy court issued an order holding that the 59-acre tract qualified as exempt rural homestead, and that the 26-acre tract could not qualify as a rural homestead because it had been abandoned by both the sale to the corporation and the operation of a business on the property.

Perry and the Dearings moved to alter or amend the judgment. On May 15, 2001, the bankruptcy court issued an amended judgment holding that the 59-acre tract was not exempt because it was insufficiently related to the 1.34 acre tract on which the Perrys live.  The court then held that Perry had a "beneficial interest" in the 1.34-acre tract, permitting Perry to seek homestead protection with respect to that portion of his property alone. The court confirmed that Perry had waived his right to claim the remainder of the 26-acre tract as a rural homestead by operating a business on the property.

## II.  Standard of Review

A district court, in reviewing the findings of a bankruptcy court, acts in an appellate capacity.  *In re Webb,* 954 F.2d 1102, 1103 & n.1 (5th Cir. 1992).  Accordingly, the weight we assign to the district court's conclusions is subject to our discretion. *In re CPDC, Inc.,* 2003 WL 21500004, at *3 (5th Cir. July 1, 2003). We review the bankruptcy court's rulings and decisions under the same standards employed by the district court.  *Id.; In re*

5

*Kennard,* 970 F.2d 1455, 1457 (5th Cir. 1992). Conclusions of law are reviewed *de novo. In re Killebrew,* 888 F.2d 1516, 1519 (5th Cir. 1989); *In re Argo Financial, Inc.,* 2003 WL 21536985, at *3 (5th Cir. July 8, 2003). A finding of fact, however, may be disregarded only if it is clearly erroneous. *In re Barron,* 325 F.3d 690, 692 (5th Cir. 2003). The bankruptcy judge's opportunity to make first-hand credibility determinations entitles its assessment of the evidence to deference by both the district court and this court alike. *Firstbank v. Pope,* 141 B.R. 115, 118 (E.D. Tex. 1992), *aff'd,* 979 F.2d 1534 (5th Cir. 1992). Neither may weigh the evidence anew. *Id.* Rather, we must determine whether the evidence supports the bankruptcy court's findings and set them aside only if we are left with "the definite and firm conviction that a mistake has been committed." *In re Dennis,* 330 F.3d 696, 701 (5th Cir. 2003); *In re Williams,* 2003 WL 21536981, at *3 (5th Cir. July 7, 2003).

### III. Discussion

A. The Testimony of January 10, 2001

We first address Perry's procedural point of appeal. Perry contends that the bankruptcy court erred by receiving and taking into consideration testimony presented by the Bank on January 10, 2001.

Under Federal Rule of Bankruptcy Procedure 4003(b), a party in interest who disputes an exemption claimed by the debtor must

file an objection no later than 30 days after the meeting of creditors or 30 days after any amendment to the list of exemptions or supplemental schedules is filed. Perry contends, and the district court agreed, that the bankruptcy court erred when it permitted the Bank to file its objections to Perry's claimed homestead exemption well after the filing deadline. *See In re Stoulig,* 45 F.3d 957, 957-58 (5th Cir. 1995) (holding that a bankruptcy court may not extend the 30-day objection period).

A review of the record, however, indicates that Perry and the district court mischaracterize the role of the Bank in the proceedings. Perry and the district court elevate form over substance by relying upon the Bank's self-titled pleading "Objection to Debtor's Claimed Exemptions" to define the Bank's involvement. *See In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir. 2002); *Ins. Co. of N. Am. v. Dealy,* 911 F.2d 1096, 1100 (5th Cir. 1990). As counsel for the Bank noted, and the district court acknowledged, the Bank sought in its pleading not necessarily to object to Perry's claimed homestead exemption, but to respond in writing to the court's notice of pending litigation, as requested, and to express its willingness to participate in the proceedings to the degree that the court may desire.

Rule 611(a) of the Federal Rules of Evidence grants the court control over determining the mode and order of presenting

evidence.[6]  We have held that judges are to be permitted "wide

discretion" in exercising their power to control federal trials.

*See United States v. Fusco,* 748 F.2d 996, 999 (5th Cir. 1984);

*United States v. Sanchez,* 988 F.2d 1384, 1393 (5th Cir. 1993).

This court has held that Rule 611(a) permits reopening a hearing

for further testimony upon its own motion.  *See United States v.*

*1078.27 Acres of Land, More or Less, Situated in Galveston*

*County, Texas,* 446 F.2d 1030, 1034 (5th Cir. 1971).   The

bankruptcy court's decision to do so, and to continue the

September 18 and 19, 2000 hearing on the Dearings' objection to

January 10, 2001, did not constitute an abuse of this discretion.

The district court erred in holding that testimony from the

January 10, 2001 hearing was improperly considered by the

bankruptcy court.

B.    Homestead Exemption

    1.    Pretended Sale

    Texas permits a family who has filed for bankruptcy

---

[6]Rule 611(a) states in part:

> "a.   Control by Court.
>
> The court shall exercise reasonable control
> over the mode and order of interrogating
> witnesses and presenting evidence so as to
> (1) make the interrogation and presentation
> effective for the ascertainment of the
> truth..."

Fed. R. Evid. 611(a).

protection to exempt up to 200 rural acres of land from the bankruptcy estate if the property is used for the purpose of a rural home.[7]  Tex. Prop. Code Ann. § 41.002(b) (Vernon 2000). *See also* Tex. Const. art. XVI, § 51 (Vernon 1993).  The homestead designation precludes property from forced sale in order to satisfy the bankrupt's debts, unless those debts are "for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon."  Tex. Const. art. XVI, § 50 (Vernon 1993).

In his bankruptcy schedule, Perry claimed as an exempt homestead the 26-acre tract and the contiguous 59-acre tract. The Dearings timely objected to this designation.  Under Texas's generous homestead law, homestead rights may be lost only through death, abandonment or alienation.[8]  *In re Moody,* 862 F.2d 1194, 1198 (5th Cir. 1989).  *See also Resolution Trust Corp. v.*

---

[7]Texas also maintains a separate statutory scheme to protect the urban homestead.  Tex. Prop. Code Ann. § 41.002(a).

[8]At times courts have often failed to distinguish between abandonment and alienation as separate means of extinguishing the homestead.  *Resolution Trust Corp. v. Olivarez,* 29 F.3d 201, 206-07 (5th Cir. 1994).  Many cases involving what has been labeled "abandonment" would be more appropriately categorized as alienation cases.  *See, e.g., In re Evans,* 135 B.R. 261 (Bankr. S.D. Tex. 1991).  Abandonment requires cessation or discontinuance of the use of the property coupled with intent to abandon permanently the homestead.  *Olivarez,* 29 F.3d at 207 & n.7.  Homestead status may be lost through alienation when the title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property.  *Id.* at 206-07.  *See* Black's Law Dictionary 73 (7th ed. 1999).

*Olivarez,* 29 F.3d 201, 206-07 (5th Cir. 1994). The Dearings allege that Perry alienated title to the twenty-six acre tract by conveying it to the Corporation, and in the process extinguished his homestead interest. Perry responds that the conveyance was a sham, or "pretended sale" intended to circumvent Texas homestead laws, and thus void under the Texas Constitution. *See* Tex. Const. art. XVI, § 50 (Vernon 1993)("[A]ll pretended sales of the homestead involving any condition of defeasance shall be void.").

The bankruptcy court determined that the 1985 conveyance was not a sham. The district court disagreed, and reversed. A bankruptcy court's determination as to whether a debtor's sale of his home to a corporation was a pretended sale is a question of fact to be reversed only if it is clearly erroneous. *Firstbank,* 141 B.R. at 118. Applying this standard, we are unable to agree with the district court that the bankruptcy court's conclusion regarding the validity of the 1985 conveyance is deserving of reversal.

The claimant has the initial burden of establishing homestead status. *Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex. 1972); *Lifemark Corp. v. Merritt,* 655 S.W.2d 310 (Tex. Civ. App. 1983). This is accomplished by presenting evidence of both (i) overt acts of homestead usage and (ii) an intent to claim the land as a homestead. *Id.; In re Kennard,* 970 F.2d at 1458. Perry completed this "short hurdle" prior to the 1985 transfer to

10

the Corporation by occupying it for more than twenty years. *See In re Bradley,* 960 F.2d 502, 507 (5th Cir. 1992)("Possession and use of land by one who owns it and who resides upon it makes it the homestead *in law and in fact.*"). *Accord In re Claflin,* 761 F.2d 1088, 1092 (5th Cir. 1985)(finding that use and occupancy of the property establishes a homestead); *In re Kennard,* 970 F.2d at 1459 (noting that intent to claim property as homestead is presumed where the homestead claimant resides on the property). A claimant's homestead designation, such as the one made by Perry in 1997, is also considered *prima facie* evidence of what constitutes the family homestead. *Wade v. First Nat'l Bank,* 263 S.W. 654, 656 (Tex. Civ. App. 1925).

Once the claimant has made a *prima facie* case in favor of homestead status, the objecting party has the burden of demonstrating that the homestead rights have been terminated. Bankr. R. 4003(c); *In re Rubarts,* 896 F.2d 107, 110 (5th Cir. 1990); *In re Niland,* 825 F.2d 801, 808 (5th Cir. 1987). The Dearings thus carry the burden of proof on this issue.

When a homestead is conveyed to a corporation, the stock of which is owned by the grantors, the property loses its homestead character regardless of whether the grantors continue to occupy the property. *Nash v. Conatser,* 410 S.W.2d 512, 521-22 (Tex. Civ. App. 1966). *Accord Eckard v. Citizens Bat. Bank in Abilene,* 588 S.W.2d 861 (Tex. Civ. App. 1979); *Nowlin v. Wm. Cameron &*

11

*Co.,* 54 S.W.2d 1035 (Tex. Civ. App. 1932).  Valid title then vests in the corporation, and the property becomes subject to the debts of the corporation.  *Id.*

The Dearings assert that this is precisely what occurred when Perry transferred title of the 26-acre tract to the Corporation.  Perry, however, argues that the transfer was made at the suggestion of the Bank and solely to secure the $127,000 loan with the homestead, in violation of the Texas Constitution. As such, he contends, the transfer was a "pretended" sale and is thus void.[9]  *See* Tex. Const. art. XVI, § 50.  Perry's argument lacks merit.

Perry relies heavily upon *Rubarts v. First Gibraltar Bank, FSB,* 896 F.2d 107 (5th Cir. 1990) to support his argument.  The issue in *Rubarts* was whether homestead claimants, after transferring their property to their wholly-owned corporation in order to facilitate a loan, secured by the property, could be estopped from challenging the validity of the lien (by asserting their homestead rights) as against the Bank after they reconveyed the property to themselves.  *Id.*  *Rubarts* is thus an estoppel case, not a pretended sale case.  Furthermore, *Rubarts* addresses the viability of the claimants' asserted homestead interest *as*

---

[9]Interestingly enough, Perry has not asserted that the pretend sale nullifies *the Bank*'s lien against the 26-acre tract.

12

*against the Bank from whom they took out the loan*, not as against a third-party purchaser, such as the Dearings, who were not involved in either the sale of the property to the corporation or the loan from the Bank. *Id.* at 111-12. *Compare Eylar v. Eylar,* 60 Tex. 315 (1883) *with Moore v. Chamberlain,* 195 S.W. 1135 (Tex. 1917). *Rubarts,* thus, does not assist Perry with respect to his claim that the 1985 transfer of the 26-acre tract was a pretended sale.[10]

Perry also emphasizes that the Corporation never filed tax returns or by-laws, issued stock certificates, recorded minutes of meetings, or operated the campground. While these facts are certainly evidence that the Corporation fell out of good standing with the State of Texas, and may have been formed solely to facilitate the acquisition of the $127,000 loan, they do not challenge the legitimacy of the Corporation's existence on December 5, 1985, or make the transfer of the 26-acre tract to the Corporation anything less than bona fide.

---

[10]If anything, *Rubarts* may lend support an estoppel defense by the Dearings. *See* 896 F.2d at 112. The Dearings assert that Perry is estopped from asserting his homestead rights to the 26-acre tract the first time in their reply brief to this court. Because "an appellant's original brief abandons all points not mentioned therein," and the argument has not been fairly presented to the bankruptcy court, we decline to consider this new argument. *Piney Woods Country Life School v. Shell Oil Co.,* 905 F.2d 840, 854 (5th Cir. 1990)(quoting *Nisho-Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1539 n.14 (5th Cir. 1984)). *Accord City of Abilene v. EPA,* 325 F.3d 657, 661 n.1 (5th Cir. 2003).

As a Texas Court of Appeals noted in *Mayfield v. First State Bank of Holland,* 19 S.W.2d 454 (Tex. Civ. App. 1929):

> We know of no inhibition against
> incorporating a business and conveying to the
> corporation the property on which the
> business is conducted, even if it constitutes
> a business homestead and the purpose is to
> obtain credit by making the business
> homestead an asset of the corporation.

*Cf. Shepler v. Kubena,* 563 S.W.2d 382, 386 (Tex. Civ. App. 1978)), *disapproved on other grounds, Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562 (Tex. 2001))(noting that because a corporation cannot have a homestead interest, it may borrow money and pledge the realty as security without violating the Texas Constitution). The mere fact that the 26-acre tract may have been transferred to the Corporation solely in order to avoid the prohibition against encumbering the homestead does not alone convert a legitimate sale into a "pretended" or sham transaction. *Id.* Rather, a sale is "pretended" if the parties to the sale did not intend for title to vest in the purchaser. *Hardie & Co. v. Campbell,* 63 Tex. 292 (1885).

The testimony of Perry, Bill Lewis, the title company officer who handled the closing, and Mike Healy, the Bank's loan officer on the transaction, provide conflicting evidence of what the Bank and Perry intended the 1985 conveyance to accomplish. The bankruptcy court ultimately found Healy's characterization of the circumstances of the transfer more credible. First, Healy

14

testified that Perry had initiated the idea of forming a corporation in order to limit his personal liability. Second, he noted that the Bank probably would have made the $127,000 loan to Perry in the absence of the transfer of the 26-acre tract to the Corporation. Both Healy and Lewis testified that Perry had told them that he had intended to convey the property to the Corporation in 1985. The bankruptcy court also credited Lewis's statement that Perry was an honorable gentleman who would not engage in a sham transaction (as confirmed by testimony from Perry himself). In the absence of any evidence, other than the self-serving testimony of Perry, that the parties did not intend for title to vest in the corporation, the bankruptcy court's decision that the 1985 transfer of the 26-acre tract was legitimate was not clearly erroneous.

Moreover, Texas prohibits only those pretended sales that include a condition of defeasance. Tex. Const. art. XVI, § 50; *Hardie & Co. v. Campbell,* 63 Tex. 292 (1885); *Red River Nat'l Bank in Clarksville v. Latimer,* 110 S.W.2d 232, 237 (Tex. Civ. App. 1937). A condition of defeasance permits the seller to reclaim the title to the property conveyed after the loan is repaid. *See* Black's Law Dictionary 428 (7th ed. 1999). Perry testified that there was no condition of defeasance attached to the transfer to the Corporation. Therefore, even if the parties did engage in a pretended sale of the 26-acre tract, it was not

15

the kind of pretended transaction that the Texas Constitution prohibits.

2.   The Affidavit

Perry contends that even if the 1985 conveyance legitimately transferred title to the 26-acre tract to the Corporation, he reacquired title to the property upon the Corporation's dissolution.  While Perry is correct that when a corporation is dissolved, its property becomes the property of its stockholders (subject to the rights of the corporation's creditors), *Humble Oil & Refining Co. v. Blankenburg,* 235 S.W.2d 891, 893 (Tex. 1951), his argument fails because American Campgrounds, Inc., as of the filing of bankruptcy,[11] had not been dissolved.

On June 29, 1993, in the course of individually refinancing the Corporation's 1985 loan for $127,000, Perry and his wife executed an affidavit representing that American Campgrounds, Inc., was their wholly owned corporation, that it was defunct and no longer doing business, and that they had assumed all of the Corporation's assets and liabilities.[12]  Perry presented no evidence from the Secretary of State's office indicating that the Corporation had been dissolved, either voluntarily or otherwise.

_____

[11]*See White v. Stump,* 266 U.S. 310, 313 (1924)(holding that the right of the debtor to claim property as exempt is generally determined on the facts as they exist on the date of the filing of the petition).

[12]The affidavit itself does not contain language that grants or conveys the 26-acre tract.

16

*See* Tex. Bus. Corp. Act art. 6.01 *et seq.* (Vernon 1980 & Supp. 2003)(describing requisites and procedures for voluntary dissolution). Rather, he relies solely upon the 1993 affidavit to support his assertion that the Corporation has been voluntarily dissolved.

A corporation is not considered "defunct" or "dead" until it is dissolved. *Lowe v. Farm Credit Bank of Texas,* 2 S.W.3d 293, 297 (Tex. App. 1999). Texas law provides for voluntary dissolution only through the execution and filing of articles of dissolution with the Secretary of State. *See* Tex. Bus. Corp. Act arts. 6.01-6.03. *See also* Tex. Bus. Corp. Act art. 7.01 *et seq.* (describing requisites and procedures for involuntary dissolution); Tex. Bus. Corp. Act art. 7.12(E)(stating that a corporation may be dissolved by the expiration of the period of duration stated in the corporation's articles of incorporation). The articles must be approved by the secretary of State, who will then issue a certificate of dissolution. *Id.* at arts. 6.01(A)(2)(c), 6.07(A). There is no evidence that articles of dissolution were ever prepared, much less filed and approved by the Secretary of State with respect to American Campgrounds, Inc. Nor did Perry produce a certificate of dissolution. In the face of an explicit statutory scheme that directs the manner in which a corporation may be dissolved, we agree with the bankruptcy court that Perry did not accomplish the dissolution of American

17

Campgrounds, Inc., by his execution of the 1993 affidavit.

   3.   Perry's Interest in the 26-Acre Tract

   Title to the 26-acre tract was thus in the name of the Corporation at the time of the bankruptcy filing, as evidenced by a title search presented to the bankruptcy court.  Perry no longer possesses an ownership interest in the 26-acre tract.  Under Texas law, however, a claimant need not hold the property in fee simple in order to invoke homestead protection.  *Resolution Trust Co. v. Olivarez,* 29 F.3d 201, 205 (5th Cir. 1994).  *Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 606 (Tex. App. 1984).  Following the 1985 transfer, Perry continued to reside on the property.  He thus maintained a possessory interest in the 26-acre tract.[13]

---

   [13]The bankruptcy court held that Perry was entitled to claim a homestead exemption on the basis of a beneficial interest in the 26-acre tract.  The Texas Secretary of State is required by statute to forfeit the corporate privileges of a corporation that fails to file required reports or fails to pay annual franchise taxes.  Tex. Tax Code Ann. §§ 171.251, 171.309, 171.310 (Vernon 2003).  If a corporation's privileges are forfeited, corporate shareholders acquire beneficial title to corporate assets, although legal title to the assets remains in the corporation. *Humble Oil & Refining Co. v. Blankenburg,* 235 S.W.2d 891, 894 (Tex. 1951); *Regal Const. Co. v. Hansel,* 596 S.W.2d 150, 153 (Tex. Civ. App. 1979).

   Although no evidence was presented that Texas had actually forfeited American Campgrounds, Inc.'s, corporate privileges, the bankruptcy court presumed that a forfeiture had long since occurred because Perry had never filed a corporate tax return. Direct evidence of forfeiture, however, was readily available to the parties, should they have chosen to present it to the court. If forfeiture had occurred, the Corporation would have received a notice to that effect, and suit may have been filed. *See* Tex. Tax Code Ann. §§ 171.256, 171.303.  A notation would have been

18

As the district court correctly held, when coupled with occupancy of the property, "[a] homestead may attach to any possessory interest, subject to the inherent characteristics and limitations of the right, title or interest in the property." *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n,* 933 S.W.2d 570, 577 (Tex. App. 1996).[14]

According to the Texas Supreme Court, "[i]t is...a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be impressed

---

made on the Corporation's record in the Secretary of State's office, Tex. Tax Code Ann. § 171.311, and a brief inquiry could have easily provided definitive evidence as to whether forfeiture had occurred. The statutes requiring forfeiture of the corporate charter of corporations in circumstances such as those of American Campgrounds, Inc., are not self-executing, and require official action. 15 Tex. Jur. 2d § 452 (1996 & Supp. 2002). In the absence of any readily available evidence that such action was taken, the bankruptcy court was not at liberty to assume facts that were not in evidence and hold that Perry had acquired beneficial title to the 26-acre tract.

[14]*Accord Inwood N. Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 636 (Tex. 1987); *Laster v. First Huntsville Properties, Co.,* 826 S.W.2d 125, 130 (Tex. 1991); *Johnson v. Prosper State Bank,* 125 S.W.2d 707, 709 (Tex. Civ. App. 1937); *Gann v. Montgomery,* 210 S.W.2d 255, 258 (Tex. Civ. App. 1948); *Lawrence v. Lawrence,* 911 S.W.2d 450, 452 (Tex. App. 1996); *First Nat'l Bank v. Dismukes,* 241 S.W. 199, 200 (Tex. Civ. App. 1922). *See also In re Moody,* 892 F.2d 1194, 1200 (5th Cir. 1989).
    *But see Olivarez,* 29 F.3d at 206 & n.6 (noting that "[a] number of Texas cases suggest that absence of record title completely negates any homestead right, despite occupancy of the property by the homestead claimant.").

19

with a homestead right." *Olivarez,* 29 F.3d at 205 (quoting *Sayers v. Pyland,* 161 S.W.2d 769, 733 (Tex. 1942)). Perry's interest in the property, immediately following the 1985 transfer, became one of a tenant-at-will. *See Olivarez,* 29 F.3d at 205 (noting that couple who occupied property without title, but with permission of the title holder, became tenants at will)(citing *DeGrassi v. DeGrassi,* 533 S.W.2d 81, 87 (Tex. Civ. App. 1976)). *Accord Shepler,* 563 S.W.2d at 385-86 (holding that claimants who transferred title to a corporation, but continued to reside on the property, became tenants at will). Perry may thus claim a *limited* homestead interest in the 26-acre tract premised upon his at-will tenancy. A homestead interest in the possessory estate of a tenancy at will protects Perry's possessory interest in the 26-acre tract against all creditors – except the owner, or one with better title. *Cleveland v. Milner,* 170 S.W.2d 472, 475 (Tex. Comm. Act. 1943).

> [T]he homestead interest in the possessory estate of a tenancy at will ... [would] survive judicial foreclosure of the deed of trust and sale of the property," but "the longevity of [that] estate [would] depend ultimately upon the decision of the new fee title owner, at whose option the tenancy at will [might] be terminated or extended.

*Olivarez,* 29 F.3d at 205 (quoting *Shepler,* 563 S.W.2d at 386). Thus, just as Perry currently remains on the 26-acre tract with the permission of the Corporation, his continued possession of the property will depend upon the will and whim of any subsequent

20

owner.[15]

4.    Operation of a Business on a Rural Homestead

The bankruptcy court held that regardless of his interest in the 26-acre and 59-acre tract, Perry could not claim either as exempt homestead (except for the 1.34 acres on which he resides) because he forfeited homestead protection by operating a business on the property.  The district court did not dispute that Perry's mobile home and RV park constitute a business, but reversed the bankruptcy court's decision on the grounds that Texas permits the operation of a business on a rural homestead.

The bankruptcy court based its holding upon the broad premise that a business can never be part of a rural homestead. After a thorough review of Texas homestead law, however, we are unable to say that Texas would necessarily adopt such an unequivocal statement regarding the effect of business activity on a single contiguous piece of rural homestead property.

We accept responsibility for the bankruptcy court's misstatement of Texas law.  In reaching its conclusion, the

---

[15]We cannot pretend to know who will be the owner of the 26-acre tract at the conclusion of the bankruptcy proceeding.  Title to the 26-acre tract lay in the Corporation upon filing.  We presume that Perry's ownership interest in the Corporation is part of the bankruptcy estate.  *See* 11 U.S.C. § 541(a)(1) ("All legal or equitable interests of the debtor as of the commencement of the bankruptcy case become the property of the bankruptcy estate.").  How this ownership interest is liquidated is a matter for the bankruptcy court.

bankruptcy court relied upon a statement contained in a footnote in one of our prior decisions, *In re Bradley,* 960 F.2d 502 (5th Cir. 1992). Footnote 6 states, "[u]nlike the urban homestead, the rural homestead does not encompass a 'business homestead,' and indeed, the operation of a business on part of a rural homestead forfeits the homestead protection on that part of the property." *Id.* at 506 n.6.

We are not bound, however, to follow *Bradley.* *Bradley* did not concern the operation of a business on claimed rural homestead property. *Id.* There, we were asked to decide whether the claimants had abandoned a portion of their rural homestead by lack of use or by disclaimer. *Id.* at 508. The statement in footnote 6 was not relevant to the holding, and is therefore dictum that we are not bound to follow. *United States v. Calderon-Pena*, 2003 WL 21665000, at *4-5 (5th Cir. July 17, 2003); *Curacao Dry Dock Co. v. M/V AKRITAS,* 710 F.2d 204, 206 (5th Cir. 1983). Moreover, the single case we cited in support of the statement in *Bradley* is an undeniably weak reed upon which to rest such a sweeping pronouncement of Texas homestead law.[16]

---

[16]*O'Brien v. Woeltz* held that a portion of the lot upon which the claimant resided was abandoned for residential homestead purposes when it was sectioned off and prepared for construction of a "business house" from which the husband intended to run his business. 58 S.W. 943, 944 (Tex. 1900). The case involved urban property, and did not discuss the forfeiture of a rural homestead. The cordoned off property was denied homestead protection because at the time that the deed of trust was executed on the property, it was in the process of being

22

Homesteads are favorites of the law, and are liberally construed by Texas courts. *In re Bradley,* 960 F.2d 502, 507 (5th Cir. 1992); *Whiteman v. Burkey*, 282 S.W. 788 (Tex. 1926). We are therefore obligated to interpret the Texas homestead laws equally broadly in order to effectuate their purpose of protecting the family home and a place where the head of the household may pursue his "calling" or "business." *See Wynne v. Hudson,* 17 S.W. 110, 112 (Tex. 1896)(stating the purpose of the homestead exemption).

At first blush, the plain meaning of the Texas Constitution and Texas Property Code appear to support the conclusion that a business may not be included as part of a rural homestead. The laws require that a rural homestead must be "used for the purposes of a rural home" and may include up to 200 acres of land for a family. Tex. Prop. Code Ann. § 41.002(b). The urban homestead, in contrast, must be "used for the purposes of an urban home *or as both an urban home and a place to exercise a calling or business*," and may include no more than 10 acres.[17]

developed, and was not being used as either a residence or a place of business. The husband was still running his business from another piece of property that comprised the family's business homestead at the time. *Id.* at 944-45. The case is thus not particularly probative of the effect that operating a business may have upon a claimed rural homestead.

[17]The legislature permitted significantly more land to be set aside as a rural homestead due to the greater property needs of the rural family, which usually relies upon ranching or farming for support. *In re Mollendorf,* 1989 WL 16034 at *3 (Bankr. W.D.

*Id.* at § 41.002(a)(emphasis added); Tex. Const. art. XVI, § 51 (emphasis added).  The bankruptcy judge inferred that, in light of a phrase expressly sanctioning the operation of a business on an urban homestead, the absence of similar language purposely denied the inclusion of property utilized for business purposes in a rural homestead.  *See id.*

It appears, however, that a business element has historically been embedded within the definition of a rural homestead.  *See, e.g., Painewebber Inc. V. Murray,* 260 B.R. 815, 822 (E.D. Tex. 2001).  The statement permitting the inclusion of business property in the urban homestead was added in 1876 to the Texas Constitution[18] in order to ensure that property essential to the livelihood of urban dwellers would be as equally protected from creditors as that of rural residents.  Due to the agrarian nature of rural society at the time, property designated as a rural residential homestead served the dual purpose of protecting the family's means of survival (e.g., farming), as well as its home.[19]  *See Foust v. Sanger,* 35 S.W. 404, 405 (Tex. Civ. App.

---

Tex. 1989) (citing *Autry v. Reaser,* 108 S.W.1162, 1164 (Tex. 1908)).

[18]Constitution of 1876, Art. XVI, § 51.  *See* Angus S. McSwain, *The Texas Business Homestead*, 15 Baylor L. Rev. 39, 39 (1963).

[19]The rural homestead exemption encompasses up to 200 acres of land in order to enable the debtor to support his family. *Foust v. Sanger,* 35 S.W. 404, 405 (Tex. Civ. App. 1896).

24

1896).  Certainly, some of the farming activity that was done on rural homestead property was tantamount to operating a "business."[20]  The urban residential homestead, however, often protected only the family shelter, and not necessarily the property essential to the pursuit of the debtor's livelihood.  As a Texas Court of Appeals explained,

> Undoubtedly the purpose of the homestead exemption is to shield from creditors a place for the family to live *and a place for the head of the family to exercise his calling or business* to enable him to support the family. It was contemplated that a rural homestead would serve both purposes, and, therefore, no separate provision was made for a residence and a business homestead, although it was permitted that the homestead consist of separate and detached parts, if used for the purposes of a home.  As to the urban homestead, it was not contemplated that the exemption of a place of residence would be sufficient as the exemption of a place to exercise the calling or business of the head of the family.  Hence a separate provision was made for each.

*Thomas v. Creager,* 107 S.W.2d 705, 709 (Tex. Civ. App. 1937) (emphasis added).  *See also In re Mollendorf,* 1989 WL 16034, at *4 n.6 (Bankr. W.D. Tex. 1989)(Clark, J.) ("In a rural homestead exemption is comprehended a residence and business homestead

---

[20]As the bankruptcy court noted, a "business" has been held to embrace every "legitimate avocation by which honest support of a family may be obtained."  *In re Perry,* 267 B.R. 759, 769 n.14 (Bankr. W.D. Tex. 2001)(citing *C.D. Shamburger Lumber Co. v. Delavan,* 106 S.W.2d 351, 356 (Tex. Civ. App. 1937), which also defined a business as "that which occupies the time, labor, and attention of men for the purpose of profit or improvement.").

exemption.  Therefore, the dedication consists of the use of a part of the tract for a residence and the balance for the support of the family.").

The purpose of the homestead exemptions, both urban *and* rural, has been to protect not only the home, but also the property that enables the head of the household to support the family.[21]  *Foust,* 35 S.W. at 405.

> The exemptions should not be construed as reserving merely a residence where a family may eat, drink and sleep, but also a place where the head or members may pursue such *business* or avocation as is necessary for the support and comfort of the family.

*Pryor v. Stone,* 19 Tex. 371 (Tex. 1857)(emphasis added).  *See also Houston & Great N.R.R. Co. v. Winter,* 44 Tex. 597, 611 (Tex. 1876)(stating that the rural homestead exemption aims to protect the farm, mill, gin, tanyard, or whatever else had been used in connection with the residence to provide a living and support the family); *In re Spencer,* 109 B.R. 715 (Bankr. W.D. Tex. 1989)(defining a rural homestead as "land that must be used for a residence and the balance of the tract for the support of the family."); 43 Tex. Jur. 2d § 35 (stating that the rural homestead

---

[21]Several creditors, drawing on language in cases such as *In re Spencer,* 109 B.R. 715 (Bankr. W.D. Tex. 1989), have in fact argued in other cases that the homestead laws actually *require* rural property to support economically the family in order to be exempt.  *See, e.g., Painewebber Inc. V. Murray,* 260 B.R. 815, 827-828, 829 & n.54 (E.D. Tex. 2001); *In re McCain,* 160 B.R. 933 (E.D. Tex. 1993); *In re Mitchell,* 132 B.R. 553 (Bankr. W.D. Tex. 1991).

exemption serves the purpose of securing a place for a home *and* a place for the claimant to exercise his business or calling). Perry's use of his property thus ostensibly comports with the stated purpose of the homestead laws.

Neither the Texas Property Code, nor the Texas Constitution, bar a rural resident from operating a business, per se, on the property on which he resides. Because the "business" or "calling" of rural residents has traditionally been agricultural, the Texas Supreme Court has not yet been presented with the opportunity to pass upon a case that involves (a) a rural resident, who claims (b) rural property, that is (c) on the same tract as his residence[22] and (d) is used for non-agricultural business purposes, as part of his homestead. *But see, Hollifield v. Hilton,* 515 S.W.2d 717, 717-721 (Tex. Civ. App. 1974), *writ*

---

[22]Perry's home is not separated or detached from the mobile home park. He and his wife live in the same building which houses the park's office and store. Had the park been separated from Perry's residence, this case would have been decided differently. Property that is separated from the land on which the claimant resides must be used principally for the purposes of a home if it is to be included in a claimant's rural homestead. *In re Brooks,* 233 B.R. 696 (Bankr. N.D. Tex. 1999); *In re Mitchell,* 132 B.R. 553 (Bankr. W.D. Tex. 1991); *Continental Inv. Co. v. Schmeich,* 145 S.W.2d 219 (Tex. Civ. App. 1940); *Seidemann v. New Braunfels State Bank,* 75 S.W.2d 167 (Tex. Civ. App. 1934). A separate parcel has been held to be part of the homestead where proof has been provided indicating that the land had been used as a site for a garage, stable, barn, horse lot, pasture, garden, or playground for the children of the family. 43 Tex. Jur. § 34. Separate land that is devoted primarily to generating income for the family, however, is not used principally for home purposes and thus is not included in the rural homestead. *Walker v. Dailey,* 290 S.W. 813 (Tex. Civ. App. 1927).

*ref'd, n.r.e.* (holding that where appellants owned and resided upon contiguous 60-acre rural farm and used 18 acres as a mobile home park, 18-acre tract was part of the rural homestead); *In re Buie,* 287 F. 896 (N.D. Tex. 1923), *aff'd, Rockhold v. Buie,* 293 F. 1021 (5th Cir. 1923)(concluding that land, contiguous to the debtor's residence, on which he ran a general store and public blacksmith shop, *was* exempt rural homestead); In the absence of a clear statement expressly limiting the scope of the rural homestead to property used for home or agricultural purposes, we cannot agree that the operation of a business, without more, necessarily forfeits a rural homestead interest.

The Dearings challenged Perry's ability to claim the 26 and 59-acre tracts as rural homestead on the theory that they were used inconsistently with homestead purposes. *See Wynne v. Hudson,* 17 S.W. 110, 112 (Tex. 1886)(holding that land that is permanently appropriated to an "inconsistent use" is abandoned). On remand, the court may wish to consider the impact that the operation of a mobile home and RV park, specifically, has upon the status of a claimed rural homestead.

There is a significant body of Texas case law indicating that one who rents a section of his property continuously to others, abandons that portion of his property for purposes of the

homestead laws.[23]  The cases justify partitioning a single piece

of land into homestead and non-homestead portions in these cases

not because renting constitutes a business, *see Mays v. Mays,* 43

S.W.2d 148, 152 (Tex. Civ. App. 1931), but because by permanently

renting the property to others, the owners surrender possession

and control of the property.  *See, e.g., Texas Building &*

*Mortgage Co. v. Morris,* 123 S.W.2d 365, 371 (Tex. Civ. App.

1938).  In so doing, they evince an intention to abandon it for

homestead purposes.  *Id.*

Renting property does not always abandon it for purposes of

the homestead laws.  Indeed, the Constitution and Texas Property

Code protect the homestead status of property that is only

temporarily rented.  Tex. Const. art. XVI, § 51; Tex. Prop. Code

Ann. § 41.003.  Whether Perry temporarily rented portions of his

homestead property or did so permanently in such a manner that he

abandoned the property as his homestead is a question of fact.

*Carver v. Gray,* 140 S.W.2d 227, 231 (Tex. Civ. App. 1940).

Because abandonment is an affirmative defense, the party opposing

the homestead claim, in this case the Dearings, carries the

---

[23]*See, e.g., Wynne,* 17 S.W. at 112-13; *Blum v. Rogers,* 15
S.W. 115, 117 (Tex. 1890); *Mays v. Mays,* 43 S.W.2d 148 (Tex. Civ.
App. 1931); *Atwood v. Guaranty Const. Co.,* 63 S.W.2d 685 (Tex.
Comm. App. 1933); *Uvalde Rock Asphalt Co. v. Warren,* 91 S.W.2d
321, 324 (Tex. Comm. App. 1936); *Jefferson Standard Life Ins. Co.
v. Lindsey,* 94 S.W.2d 549, 552 (Tex. Civ. App. 1936); *Yates v.
Home Building & Loan Co.,* 103 S.W.2d 1081, 1085 (Tex. Civ. App.
1937); *Texas Building & Mortgage* Co. v. *Morris,* 123 S.W.2d 365,
371 (Tex. Civ. App. 1938).

burden.  *Huffington v. Upchurch,* 532 S.W.2d 576 (Tex. 1976).

As an initial matter, the court should determine whether, and if so, over what portions of property, Perry released possession and control.  *See Hollifield v. Hilton,* 515 S.W.2d 717 (Tex. Civ. App. 1974) (finding that property used as mobile home park was only temporarily rented to others because tenants were month-to-month).  Then, the court should consider Perry's intent with respect to that portion of the property.  *Gonzales v. Guajardo de Gonzalez,* 541 S.W.2d 865, 867 (Tex. Civ. App. 1976). If Perry intended to resume control over the property, the property will not lose its homestead character.  *Hollifield,* 515 S.W.2d at 721 (finding lack of intent to abandon homestead when claimant testified to that effect and when rental property could be reconverted to agricultural use with minimal effort).

Although we are unable to agree that the operation of a non-agricultural business on a rural homestead necessarily sacrifices the homestead character of that portion of the property, we are not in a position to say that Perry, by operating a mobile home and RV park, did not abandon the 26-acre tract for homestead purposes.  We therefore vacate the bankruptcy court's ruling and remand for a determination of this issue.

5.   The 59-Acre Tract

The bankruptcy court ruled that Perry could not claim the 59-acre tract as part of his rural homestead because its sole use

30

was to support the business which forfeited homestead protection for the 26-acre tract.  Because we vacate the bankruptcy court's ruling that the operation of a business on the 26-acre tract forfeited the property's homestead status, we must also vacate the court's opinion with respect to the 59-acre tract.

For the foregoing reasons, the bankruptcy court's judgment based upon its determination that Perry forfeited the homestead character of the 26-acre and 59-acre tracts by operating a business on the property is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.

VACATED and REMANDED