

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00297-CV

_____

**CHRISTINA OWENS,**

                                                                    **Appellant**

 **v.**

**JOHN HAWKINS, JANEL SUE SKRABANEK,
JACK PAUL MOORE, WILLIAM RICHARD
MOORE, AND BRUCE A. SKRABANEK,**

                                                                    **Appellees**

_____

**From the 21st District Court
Burleson County, Texas
Trial Court No. 25,890**

_____

## MEMORANDUM OPINION

_____

Christina Owens appeals from the trial court's order granting a no-evidence motion for summary judgment filed by John Hawkins,[1] Janel Sue Skrabanek, Jack Paul Moore, William Richard Moore, and Bruce A. Skrabanek.[2] Because the trial court did not err in granting the motion for summary judgment, we affirm the trial court's order.

---

[1] John died the day the suit was filed in the underlying case.

[2] Future references to these parties as a group will be to the Hawkins parties.

## BACKGROUND

The parties to this proceeding are all related. Christina Owens is John Hawkins' daughter. The other appellees are Owens' niece, Janel, Owens' nephew, Jack Paul, Owens' brother-in-law, William, and Owens' nephew-in-law, Bruce. John owned 42 acres of land, a tractor and other farm equipment, and some cattle. John gave his tractor, farm equipment, and cattle to Bruce in 1997. In 1999, Owens obtained a judgment against John and Owens' sister, Sue Moore. That judgment was reversed in part and affirmed in part by the First Court of Appeals in Houston. *Hawkins v. Owens*, No. 01-09-00918-CV, 2000 Tex. App. LEXIS 5667 (Tex. App.—Houston [1st Dist.] Aug. 24, 2000, pet. denied) (not designated for publication). In October of 2001, John divided his 42 acres into 4 tracts and gave one to Janel, one to Jack Paul, one to William, and one to Bruce. After filing a writ of execution in 2009, Owens filed a lawsuit against the Hawkins parties for fraudulent transfer of the acreage and the tractor, farm equipment, and cattle pursuant to the Texas Uniform Fraudulent Transfer Act. The Hawkins parties filed a no-evidence motion for summary judgment which was granted by the trial court.

In one issue, Owens contends the trial court erred in granting the Hawkins parties' no-evidence motion for summary judgment because there was a genuine issue of material fact regarding whether John's real and personal property were assets subject to the Texas Uniform Fraudulent Transfer Act.

## NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT STANDARD

After an adequate time for discovery has passed, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *See* TEX. R. CIV. P. 166a(i); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682-83 (Tex. App.—Dallas 2000, no pet.). The granting of a no-evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

## FRAUDULENT TRANSFER ACT

The Texas Uniform Fraudulent Transfer Act provides remedies to creditors of debtors who fraudulently transfer assets under certain circumstances, as set out in the statute. *See* TEX. BUS. & COM. CODE ANN. §§ 24.005-.006, 24.008 (West 2009); *see also Goebel v. Brandley*, 174 S.W.3d 359, 362 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). As it pertains to this case, a transfer made by a debtor is fraudulent as to a present or future creditor if the transfer was made with actual intent to hinder, delay, or defraud any creditor of the debtor. TEX. BUS. & COM. CODE ANN. § 24.005(a) (West 2009). A "transfer" is defined as any means of "disposing of or parting with an asset or

an interest in an asset, and includes payment of money . . . and creation of a lien or other encumbrance." *Id*. § 24.002(12) (West 2009). As further defined by the statute, an "asset" is "property of a debtor," but excludes "property to the extent it is generally exempt under nonbankruptcy law[.]" *Id*. § 24.002(2)(B). The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence. *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 842 (Tex. App.—Dallas 2006, no pet.). This includes the burden to prove the "transfer" of an "asset." *See Van Slyke v. Teel Holdings, LLC*, No. 01-08-00600-CV, 2010 Tex. App. LEXIS 5551, *11 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.).

The Hawkins parties filed a no-evidence motion for summary judgment asserting that the real property and personal property alleged to be fraudulently transferred were not "assets" as defined by the statute. Although they were not required to, the Hawkins parties submitted evidence that the real property, the 42 acres, was John's rural homestead, and thus, not an asset. *See* TEX. CONST. ART. VXI, § 51; TEX. PROP. CODE ANN. § 41.002 (West 2000). Generally, a homestead is exempt from forced sale by general creditors. TEX. CONST. ART. XVI, § 50. The Hawkins parties further argued that the tractor, farm equipment, and cattle were not assets because a single person's personal property is exempt from garnishment, attachment, execution, or other seizure if it is of an aggregate fair market value of not more than $30,000. TEX. PROP. CODE ANN. §§ 42.001(a)(2); 42.002 (West Supp. 2011; West 2000).

In Owens' response to the no-evidence motion for summary judgment, she alleged that a cabin on John's property was rented out at times to her and to others. She also claimed that the cabin was "owned" by either Sue Moore or William Moore, Owens' sister and brother-in-law. Owens also claimed that John allowed William to start building a house on a portion of the property. Owens attached voluminous evidence to her response, which included a complete deposition of Sue, the complete trial testimony of an eviction proceeding brought by Sue against Owens, and the testimony of John and of Owens' two children from a trial which resulted in a judgment against John and Sue, allegedly in support of these allegations. She then asserted that this evidence created a fact issue that John abandoned his property as a homestead. Thus, as her argument continued, the property lost its exempt status and became an asset subject to the Act.

*Abandonment*

Once property has been dedicated as homestead, it can only lose such designation by abandonment, alienation, or death. *Ramsey v. Davis*, 261 S.W.3d 811, 817 (Tex. App.—Dallas 2008, pet. denied); *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied); *Garrard v. Henderson*, 209 S.W.2d 225, 230 (Tex. Civ. App.—Dallas 1948, no writ). Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead coupled with the intent to permanently abandon the homestead. *Franklin v. Woods*, 598 S.W.2d 946, 949

(Tex. Civ. App.—Corpus Christi 1980, no pet.). On appeal, citing an opinion from the Fifth Circuit, Owens contends that by "permanently" renting a portion of his homestead property to others, John abandoned that portion of his property for homestead purposes. *See Perry v. Dearing*, 345 F.3d 303 (5th Cir. 2003).

In *Perry*, however, the issue was whether the bankruptcy court erred in ruling that the bankruptcy petitioner forfeited the homestead character of a 26 acre tract and a 59 acre tract by operating a business on the property. *Perry*, 345 F.3d at 319. That is not the question in this appeal. Then, in determining that the bankruptcy court erred, the Fifth Circuit proposed a question to the bankruptcy court on remand; that is, what the impact that the operation of a mobile home and RV park, specifically, had upon the status of a claimed rural homestead. *Id.* at 318. It then observed that significant case law existed in Texas indicating that one who rents a section of his property continuously to others, abandons that portion of his property for purposes of the homestead laws. *Id.* It is this observation upon which Owens appears to be relying to support her argument. But, the Fifth Circuit also noted that renting property does not always abandon it for purposes of the homestead laws and acknowledged that the Texas Constitution and the Texas Property Code protect the homestead status of property that is only temporarily rented. *Id.* at 319; TEX. CONST. ART. XVI, § 51; TEX. PROP. CODE ANN. § 41.003 (West 2000).

The cases cited by the *Perry* opinion regarding the abandonment of a homestead by the continuous rental of a portion of it predate the adoption of article XVI, section 51 of the Texas Constitution and the enactment of section 41.003 of the Texas Property Code. Even if those cases remain the law in Texas, Owens presented the trial court with no evidence that John rented the cabin continuously. Further, she presented the trial court with no evidence that John ceased or discontinued his of use of the property as a homestead which was coupled with an intent to permanently abandon it. *See Franklin v. Woods*, 598 S.W.2d 946, 949 (Tex. Civ. App.—Corpus Christi 1980, no pet.). At most, Owens presented the trial court with evidence that John temporarily rented a portion of his homestead property which does not change the homestead exemption. TEX. CONST. ART. XVI, § 51; TEX. PROP. CODE ANN. § 41.003 (West 2000). This is no evidence that John abandoned his homestead.

Owens also claims on appeal that John abandoned his homestead exemption by allowing William to build a house on another portion of the property and by allowing William and Bruce to operate an agricultural operation on the entire 42 acres. Owens cites to no case authority in support of her argument. Accordingly, this portion of her issue is inadequately briefed and presents nothing for review. TEX. R. APP. P. 38.1(i).

Lastly, Owens argues that Exhibit A-3 attached to the Hawkins parties' Third Amended Motion for Summary Judgment creates a fact issue as to the exempt status of the property because, her argument continues, in that Exhibit, at least half of the

property is designated as non-homestead. Again, Owens cites to no case authority in support of her argument. This portion of her issue is inadequately briefed and presents nothing for review.[3] TEX. R. APP. P. 38.1(i).

Thus, the evidence attached by Owens to her response creates, at most, only a mere surmise or suspicion that John abandoned his homestead exemption and is no evidence that the real property transferred by John was an asset not generally exempt by non-bankruptcy law and subject to the Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE ANN. §24.002(2)(B) (West 2009).

*Personal Property*

As for the tractor, related farm equipment, and cattle, Owens only asserted in her response and on appeal that the Hawkins parties did not prove the property was valued at less than $30,000. It was not the Hawkins parties' burden to prove the property was exempt. Rather, it was Owens burden to prove that it was an asset because it was not exempt. *See G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 842 (Tex. App.—Dallas 2006, no pet.); *Van Slyke v. Teel Holdings, LLC*, No. 01-08-00600-CV, 2010 Tex. App. LEXIS 5551, *11 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.). Thus, Owens presented no evidence that the personal property was an asset subject to the Fraudulent Transfer Act.

---

[3] We have also reviewed the document in question and cannot determine the basis of the claim made by Owens.

## CONCLUSION

Because Owens presented no evidence that the real and personal property transferred were "assets," the trial court did not err in granting the Hawkins parties' no-evidence motion for summary judgment.  Owen's issue is overruled.

Accordingly, the trial court's order is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed April 18, 2012
[CV06]