**Reversed and Remanded and Opinion filed August 28, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00519-CV

### PAULL & PARTNERS INVESTMENTS, LLC, Appellant

### V.

### JOHN B. BERRY, PATRICIA P. BERRY, AND EXBURY INVESTMENTS, LLC, Appellees

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-52458**

## O P I N I O N

In this appeal from a summary judgment, we address whether the trial court properly declared a general warranty deed void under the Texas Constitution's homestead provisions, and whether it properly ordered forfeiture of all principal and interest owed under a promissory note. Appellees John B. Berry and Patricia P. Berry (the Berrys) conveyed their homestead property to their newly created company, Exbury Investments, LLC, for the purpose of obtaining a loan from

appellant Paull & Partners Investments, LLC. Exbury Investments then executed a promissory note in favor of Paull & Partners, providing a deed-of-trust lien on the property as security for the loan. The trial court declared the conveyance from the Berrys to their company a prohibited "pretended sale" under Article XVI, Section 50(c) of the Texas Constitution. The court also held that the loan violated several provisions of section 50(a)(6) of the Constitution applicable to home-equity loans, and it signed a judgment forfeiting all principal and interest owed to Paull & Partners under the promissory note pursuant to section 50(a)(6)(Q)(x).

We conclude that the Berrys did not establish as a matter of law their right to summary judgment. They did not conclusively establish both a lack of intent to vest title and a condition of defeasance, the two requirements for a pretended sale. Even if the Berrys had established a pretended sale, the trial court erred in ordering forfeiture of principal and interest under the note because the Texas Constitution does not create an independent cause of action for forfeiture. The remedy available under the Constitution is invalidation of the homestead lien, not the underlying loan. We reverse the trial court's summary judgment in favor of appellees and remand the cause to the trial court for further proceedings.

## BACKGROUND

In November 2013, the Berrys purchased a residential property on Exbury Way in Houston (the "Exbury property"). They paid cash for the property and moved into the home shortly thereafter. The Berrys applied for and received a homestead exemption from the Harris County Appraisal District.

A little over a year after the purchase, the Berrys needed funds to pay for significant medical expenses resulting from a traumatic brain injury to their son and an unplanned spinal surgery for Patricia. John performed internet research seeking to find a lender who could loan them money quickly. His research led to Jay Cohen

2

and David Gold, two friends and business associates of Alan Paull, the owner of Paull & Partners. Cohen took John's contact information and asked about his assets, including his home on Exbury Way. John told both Cohen and Gold that his family resided in the Exbury property and would continue to do so after the closing of the loan. Cohen and Gold assured John they could arrange the loan through Alan Paull.

John averred in his affidavit that "the Defendants"—which originally included Cohen, Gold, and Paull & Partners[1]—instructed him to create a company and deed the Exbury property to the company so that the company could be the borrower, rather than John and Patricia. John did not specify which defendant gave these instructions, and Alan Paull expressly denied instructing John to form a company. Paull averred that he was approached by Cohen and Gold regarding a loan for John, whose company was in financial distress and needed a $275,000 loan. John formed Exbury Investments, LLC and filed the certificate of formation of the limited liability company with the Texas Secretary of State. The certificate of formation lists the organizer as William Rucker, the Berrys' attorney. The certificate of formation also lists an address for Exbury Investments that is the same as the address of Paull's attorney.

Shortly after forming the company, John and Patricia executed a General Warranty Deed conveying the Exbury property to the company. The deed recites $10 as consideration, though John stated they received no consideration for the transfer. John personally delivered the deed to ArcLand Title, as instructed by "Defendants," and the deed was recorded in the real property records. The next day, Paull inspected the Exbury property on behalf of Paull & Partners. At that inspection, John told Paull that his family was residing in the Exbury property with

---

[1] The Berrys later non-suited their claims against Cohen and Gold.

no intention of moving out after the closing of the loan transaction.

Four days later, Exbury Investments executed a promissory note in favor of Paull & Partners in the amount of $275,000, with a deed of trust and security agreement listing the Exbury property as security for the note. Exbury Investments also executed a Consent Resolution granting authority for the execution of the loan documents. The consent resolution is signed by John, though he stated that it was provided to him by "Defendants" as part of the loan documentation. The loan closed on December 23, 2014, and the Berrys continued to live in the home. John and Patricia continued to pay the insurance on the Exbury property and paid the property taxes for 2014.

There is conflicting evidence in the record regarding payments on the loan. John stated that he and Patricia made payments on the loan individually and Exbury Investments made no payments. Paull stated that only one payment was ever made, in the amount of $10,000, and it was made by cashier's check from Exbury Investments. Nevertheless, Paull & Partners loaned an additional $50,000 to Exbury Investments, requiring a deed in lieu of foreclosure as security.

When no other payments were made on the loan, Paull & Partners sent a notice of maturity of the debt and demand for payment, as well as a notice of intent to proceed with nonjudicial foreclosure of the lien. The Berrys responded with a letter from their attorney notifying Paull & Partners that the loan was void under section 50(a) of the Texas Constitution as an illegal lien on homestead property. The letter also stated that the loan failed to comply with various parts of section 50(a)(6) applicable to home equity loans and threatened litigation in the event Paull & Partners attempted to foreclose.

Paull & Partners executed and filed the deed in lieu of foreclosure. The Berrys then filed this suit, seeking declaratory and injunctive relief and asserting causes of

4

action for fraud, fraudulent inducement, and conspiracy to commit fraud.

The Berrys filed a traditional motion for partial summary judgment on their claim for declaratory relief. In their first ground, the Berrys argued that the conveyance of the property from John and Patricia to Exbury was void as a pretended sale under the Texas Constitution. The Berrys pointed out that they never abandoned their homestead rights and, under the pretended sale doctrine, Paull & Partners knew or had notice of facts suggesting that the sale was a pretense, making the lien void. Second, the Berrys argued that because the Exbury property remained their homestead, the entire loan transaction violated Article XVI, Section 50(a) of the Constitution, which prescribes the only loans that may result in a lien on the homestead property. The Berrys also argued that the loan violates several of the requirements for loans falling under the home-equity loan provisions in section 50(a)(6). The Berrys asserted a right to forfeiture of the entire principal and interest owed under section 50(a)(6)(Q)(x).

The trial court agreed with the Berrys and granted partial summary judgment in their favor. The trial court declared in its order that the "General Warranty Deed conveying the Property from John B. Berry and Patricia P. Berry to Exbury Investments, LLC is void as a 'pretended sale' pursuant to Tex. Const. art. XVI, § 50(c)."[2] The trial court further declared that the note and deed of trust violate the following provisions of the Texas Constitution: Article XVI, Section 50(a)(1)-(5), and Article XVI, Sections 50(a)(6)(A), (C), (D), (E), (L), (M), (P) and (Q). Finally, the trial court declared that Paull & Partners "shall forfeit all principal and interest of the Note pursuant to Tex. Const. art. XVI, Section 50(a)(6)(Q)(x)," vested legal

---

[2] The trial court's order also contains seven findings, which we do not consider because findings of fact have no place in a summary judgment. *See Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 125 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

title to the Exbury property in the Berrys, and awarded the Berrys attorneys' fees in the amount of $23,434.84.

The trial court also granted a second traditional summary judgment in favor of the Berrys on all of the counterclaims asserted by Paull & Partners, predicated on its order granting summary judgment regarding the pretended sale and forfeiture issues. The Berrys then non-suited their remaining claims for fraud, fraudulent inducement, and conspiracy to commit fraud, resulting in a final judgment.

ANALYSIS

On appeal, Paull & Partners contends in two issues that the trial court erred in granting summary judgment for the Berrys. Paull & Partners argues in its first issue that the Berrys failed to meet their burden of establishing their right to summary judgment on the issue of a pretended sale. In its second issue, Paull & Partners argues that the trial court erred in granting forfeiture of the principal and interest Exbury Investments owed Paull & Partners under the promissory note. We address each issue in turn.

## I.     Standard of review

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt., Inc.*, 497 S.W.3d 653, 658 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Where, as here, the movant seeks a traditional summary judgment, the movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A plaintiff moving for summary judgment bears the burden of conclusively establishing all elements of its cause of action as a matter of law. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979);

6

*Universal MRI & Diagnostics*, 497 S.W.3d at 658. An issue is conclusively established as a matter of law if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Universal MRI & Diagnostics*, 497 S.W.3d at 658.

Once a movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *Universal MRI & Diagnostics*, 497 S.W.3d at 658. The non-movant bears no burden to respond to a summary judgment motion unless the movant establishes its cause of action or defense. *Id.* (citing *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999)). If, in light of the evidence, reasonable and fair-minded people could differ in their conclusions, then a genuine issue of material fact exists. *Id.* In reviewing the trial court's summary judgment, we examine the evidence in the light most favorable to the non-movant, indulging every reasonable inference and resolving all doubts regarding the existence of a fact issue in its favor. *Id.*; *see also City of Keller*, 168 S.W.3d at 824.

## II. The Berrys did not conclusively establish a pretended sale.

### A. Applicable law

The Texas Constitution has long protected homeowners against the forced sale of their homesteads. *See* Tex. Const. art. XVI, § 50(a); *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016). "Historically, constitutionally noncompliant homestead liens were absolutely void." *Wood*, 505 S.W.3d at 545 (citing *Tex. Land & Loan Co. v. Blalock*, 13 S.W. 12, 13 (Tex. 1890)). "A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991). Following amendments in 1997, homestead liens could arise through

7

strict compliance with the provisions governing certain home-equity loans. *Wood*, 505 S.W.3d at 545.

Though still strongly protected by the Texas Constitution, homestead rights may be lost "through death, abandonment or alienation." *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003); *see also Intertex, Inc. v. Kneisley*, 837 S.W.2d 136, 138 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (noting homestead exemption is lost when abandoned or alienated). The Berrys argued in their motion for partial summary judgment that they never abandoned their homestead because they remained in the home after the conveyance to Exbury Investments. But given the undisputed conveyance, to obtain summary judgment the Berrys also had to prove conclusively that they did not lose their homestead rights through alienation.[3] *See Perry*, 345 F.3d at 310 n.8 (defining abandonment and alienation and noting differences between the two). We therefore examine whether the Berrys conclusively established a pretended sale such that they did not lose their constitutional homestead protections through alienation.[4] *See id.* at 313.

Homeowners may lawfully convey their homestead to a corporation, even if they remain in the home after the sale, for the purpose of obtaining a loan. *In re Perry*, 345 F.3d at 311. Texas courts have long held so:

> We know of no inhibition against incorporating a business and conveying to the corporation the property on which the business is conducted, even if it constitutes a business homestead and the purpose

---

[3] The Berrys bear this burden because they moved for traditional summary judgment. Ordinarily, once a party has made a *prima facie* showing of homestead status, the burden is on the opposing party to prove that status has terminated. *See Perry*, 345 F.3d at 311; *Almanza v. Salas*, No. 14-12-01114-CV, 2014 WL 554807, at *4–5 (Tex. App.—Houston [14th Dist.] Feb. 11, 2014, no pet.).

[4] Alienation occurs when "title to the property is transferred or conveyed to another regardless of whether the grantor retains possession of the property." *In re Perry*, 345 F.3d at 310 n.8.

is to obtain credit by making the business homestead an asset of the corporation.

*Mayfield v. First State Bank of Holland*, 19 S.W.2d 454, 455 (Tex. Civ. App. Austin 1929, no writ); *see also Anglin v. Cisco Mortg. Loan Co.*, 141 S.W.2d 935, 941 (Tex. 1940) ("The defendant in error is correct in asserting that the homestead owners might lawfully, if they saw fit so to do, sell their homestead for the purpose of paying D.M. Anglin's indebtedness to the bank."); *Eckard v. Citizens Nat'l Bank in Abilene*, 588 S.W.2d 861, 862 (Tex. Civ. App.—Eastland 1979, writ ref'd n.r.e.) (homeowner could sell home to corporation so corporation could borrow money and put valid lien on property).

The Constitution declares void, however, "pretended sales involving any condition of defeasance." Tex. Const. Art. XVI, § 50(c). A "pretended sale" is one in which the parties do not intend title to vest in the purchaser, but rather that title will be divested within a certain amount time by paying the specified amount. *See John T. Hardie & Co. v. Campbell*, 63 Tex. 292, 295 (1885) ("If it was the intention of the parties that the title was not to vest in appellants, but the object and intention was to secure them in the payment of a debt owing [buyer] by [seller], then the transaction would amount to a *pretended* sale involving a defeasance, which would render the deed invalid."). "A condition of defeasance permits the seller to reclaim the title to the property conveyed after the loan is repaid." *In re Perry*, 345 F.3d at 313 (citing BLACK'S LAW DICTIONARY 428 (7th ed. 1999)); *cf. Hardie & Co.*, 63 Tex. at 297 (agreement that seller might repurchase on "favorable terms" at end of specific period not sufficient to show condition of defeasance because no specific terms were stated upon which seller had right to repurchase).

Thus, to show a pretended sale involving a condition of defeasance prohibited by the Constitution, there must be proof that: (1) the seller did not intend title to vest

in the purchaser; and (2) the transfer involves a condition allowing the seller to reclaim title to the property after the loan is repaid. *See Hardie & Co.*, 63 Tex. at 295 ("It is not every sale of the homestead involving a condition of defeasance which [the Constitution] declares shall be void; but it declares that all *pretended* sales involving such conditions shall be void." (citations omitted)); *see also Perry*, 345 F.3d at 313 ("Moreover, Texas prohibits only those pretended sales that include a condition of defeasance."); *In re Cadengo*, 370 B.R. 681, 691–92 (Bankr. S.D. Tex. 2007) (holding transaction was not void despite lack of intent to vest title because there was no condition of defeasance); *Red River Nat'l Bank in Clarksville v. Latimer*, 110 S.W.2d 232, 237 (Tex. Civ. App.—Texarkana 1937, no writ).

### B. The Berrys did not conclusively prove lack of intent to vest title.

In their motion for partial summary judgment, the Berrys argued the conveyance to Exbury Investments was a pretended sale based on the following evidence:

- Paull & Partners knew that the conveyance was being made to Exbury Investments solely to obtain the loan.

- Alan Paull inspected the property before closing and knew that the Berrys were living in the home and intended to continue living in the home after the closing.

- The title commitment for the loan is dated December 22, 2014, with an effective date of December 16, and lists record title to the property in John and Patricia.

- The loan closed eight days after John formed Exbury Investments.

- The General Warranty Deed from the Berrys to Exbury Investments, though executed on December 18, 2014, was not recorded until December 29, after the loan closed.

- Exbury Investments gave no consideration to the Berrys in exchange for the conveyance of the property.

10

- Paull & Partners knew of the quick closing.

According to the Berrys, because Paull & Partners had knowledge or was on notice that the property was the Berrys' homestead, that the property was being conveyed mere days before the loan transaction would close, and that the Berrys were continuing to reside in the property after the closing, the transaction was a pretended sale.[5]

The evidence recited by the Berrys does not conclusively prove they did not intend title to vest in Exbury Investments. Instead, genuine issues of material fact exist as to their intent regarding title to the property. For example, John and Patricia executed the general warranty deed and John delivered the deed to the title company, which later recorded it. Evidence that a deed has been signed, delivered, and recorded gives rise to a presumption that the grantor intended the deed to become operative as a conveyance. This presumption may be overcome by showing, for example, that the grantor had no intention of divesting himself of title. In such cases, the grantor's intent is a question of fact determined by examining all the facts and circumstances preceding, attending, and following execution of the deed. *See Johnson v. Cherry*, 726 S.W.2d 4, 6 (Tex. 1987); *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261–62 (Tex. 1974); *Thornton v. Rains*, 299 S.W.2d 287, 288–89 (Tex. 1957). A secret or undisclosed intent not to convey title, or a subsequent change of intent, will not affect the conveyance. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.).

Although Alan Paull knew the Berrys continued to reside in the home, that

---

[5] We note that in response to an interrogatory asking what steps he took to investigate whether the property was the Berry's homestead at the time of the loan transaction, Alan Paull stated that he "looked it up on the Harris County Appraisal District and found Exbury Investments LLC owned the property. I know that limited liability companies cannot have homesteads in Texas."

fact alone does not negate the intent to invest title in the company. *See In re Perry*, 345 F.3d at 311 (when homestead conveyed to corporation, home loses homestead character regardless of whether grantors continue to occupy property). The Berrys paid the insurance on the home and the property taxes for 2014, but Paull stated that he has been sued by the appraisal district for unpaid property taxes on the property in 2015 and 2016. Although John Berry stated that he and Patricia have individually made payments on the loan, Paull stated that the only payment made on the loan was by cashier's check from Exbury Investments. John stated the "Defendants" told him to create the company and deed the property to the company so that the company would be the borrower. Alan Paull denies doing so and points out that the company formation papers were signed by the Berrys' attorney. In short, these are all circumstances a finder of fact must consider in determining whether the Berrys intended to vest title in Exbury Investments.

In *Red River National Bank in Clarksville v. Latimer*, the court of appeals addressed similar facts. Mr. Latimer owed several debts he could not pay. 110 S.W.2d at 234. Latimer and his wife decided to deed two acres of their homestead property to another individual, W.A. Whiteman, in exchange for Whiteman taking over a portion of the debt owed to a bank. *Id.* Whiteman and his wife agreed to pay the debt by executing promissory notes to the bank secured by a deed of trust for the two acres. *Id.* After Latimer died, his widow sought to declare the deed to Whiteman void as a pretended sale involving a condition of defeasance in violation of the Texas Constitution. *Id.* Although the case was tried to a jury, the trial court instructed a verdict in favor of Latimer's widow at the close of evidence, declaring the conveyance a void pretended sale. *Id.*

In reversing the trial court's directed verdict, the court of appeals concluded that whether a pretended sale had occurred was a fact issue for the jury to decide.

12

*See id.* at 237.   The court explained:

> If . . . it was a pretended sale and the deed was intended to only simulate a conveyance to Whiteman in order that Whiteman might execute a deed of trust on the property to the bank,  . . . the transaction would violate the provisions of the Constitution protecting the homestead against a pretended sale involving a condition of defeasance. . . . But the fact that it was understood between all the parties that Whiteman, after he purchased and acquired title to the property, would then in turn mortgage it as security for his debt which he had so obligated himself to pay the bank; and the fact that Whiteman promised the Latimers to reconvey the property to them when he had paid off said debts, do not of themselves violate the Constitution.   They are strong probative circumstances, but do not as a matter of law conclude the issue of fact as to whether or not the deed was only a pretended sale, not intending to pass title to Whiteman.  The Constitution does not declare every sale of the homestead involving a condition of defeasance void, but only pretended sales involving such conditions are declared void. . . . And the issue is one of fact.

*Id.* at 237.  The parties in *Red River* understood that the property was being conveyed so that a security interest could be given in exchange for a promissory note.  *Id.*  That fact alone did not make the conveyance a pretended sale as a matter of law.

The Berrys argue on appeal that the facts show "a sham transaction solely to evade Texas homestead protections," and that Paull & Partners knew or should have known that the conveyance was a pretext.  In essence, the Berrys argue that any time homeowners sell their homestead to a corporation solely for purposes of obtaining a loan, a pretended sale exists in violation of the Constitution.  As the cases cited in Part II.A. demonstrate, however, the Constitution does not automatically void such transactions.

In the cases cited by the Berrys, regardless of the reasons for entering the transaction, the courts analyzed whether there was evidence of an intent to vest title in the purchaser.  And, in each of the cases, that question was to be decided by the

13

trier of fact. *See Anglin*, 141 S.W.2d at 938, 941; *Ketcham v. First Nat'l Bank of New Boston, Tex.*, 875 S.W.2d 753, 755 (Tex. App.—Texarkana 1994, no writ) ("The key issue to be resolved in determining whether a sale is real or pretended is the factual question of whether the parties intended title to vest in the purchaser."); *Fuller v. Preston State Bank*, 667 S.W.2d 214, 217 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (trial court erred in directing verdict for lender where evidence raised fact issue whether lender knew party did not really intend to sell home to relatives); *see also Matter of Rubarts*, 896 F.2d 107 (5th Cir. 1990) ("The district court has specifically found that the Rubartses always intended to reconvey the property to themselves at some time after obtaining the loan."); *In re Ritter*, 2009 WL 1024656, at *1 (E.D. Tex. Mar. 26, 2009) (court in bench trial found pretended sale because sellers "had no intent to convey permanent ownership of their homestead property;" "they intended only to satisfy the Bank's temporary requirements and always intended to reverse the conveyance when the bank was paid"); *First Bank v. Pope*, 141 B.R. 115, 120 (E.D. Tex. 1992) ("Furthermore, appellant was fully aware that the Popes intended to reconvey the property within two years so as to avoid any capital gains taxes.").

In sum, none of the evidence on which the Berrys rely shows conclusively that they did not intend to vest title to the Exbury property in Exbury Investments. These facts show that the Berrys needed money and decided to convey their homestead property to a newly formed company for purposes of obtaining a loan using the property as security—a practice not automatically condemned by our Constitution. On this record, it is for the fact-finder to determine whether the Berrys intended to divest themselves of title.

## C. The Berrys offered no evidence of a condition of defeasance.

The Berrys also failed to establish a condition of defeasance, the second

requirement of a void pretended sale. A condition of defeasance is a condition that permits the seller to reclaim title to the property after the debt is paid. *In re Perry*, 345 F.3d at 313; *see also Anglin*, 141 S.W.2d at 938 (describing prohibited transaction where conveyance includes an understanding between grantor and grantee that "when the purported notes and deed had served their purpose, the homestead should be reconveyed to the grantors"). The condition need not be expressly stated in the instrument of conveyance. *Anglin*, 141 S.W.2d at 938. For example, a condition of defeasance may be: implied from other language in the conveyance, such as that it was made to secure the payment of a debt; or stated in a contemporaneous document, such as an option to repurchase on particular terms after the debt is paid. *See Tittle v. Vanleer*, 34 S.W. 715, 722 (Tex. 1896); *Mosher Steel & Mach. Co. v. Nash*, 6 S.W.2d 158, 162 (Tex. Civ. App.—Dallas 1928, writ dism'd w.o.j.); *see also In re Cadengo*, 370 B.R. at 692.

Here, the General Warranty Deed does not contain an express condition of defeasance or other language from which such a condition could be implied. Nor does the record contain any evidence of other statements of intent to reconvey the property on certain terms after the debt is paid. In any event, whether to imply a condition of defeasance is ordinarily a question of fact. *See Anglin*, 141 S.W.2d at 939–940 (noting where express condition of defeasance not recited in the deed, "equity looks to all the circumstances preceding and attending the execution of the instrument, and sometimes those which have subsequently occurred").

The Berrys argue that the court could imply a condition of defeasance to support the summary judgment because they have equitable title to the Exbury property as the sole members of Exbury Investments, LLC, which they could dissolve at any time. We disagree with the Berrys for two reasons.

First, as Paull & Partners correctly points out, the Berrys did not mention

15

equitable title in their motion for summary judgment as a basis for implying a condition of defeasance. As movants, the Berrys bore the burden of conclusively establishing each element necessary to their right to relief. *Univ. MRI & Diagnostics*, 497 S.W.3d at 660. We cannot affirm a summary judgment on a ground not presented in the motion. *See Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 862 (Tex. 2000).[6]

Second, in any event, the Berrys' argument regarding equitable title fails because equitable title is not the same thing as a condition of defeasance. We recognize that in some circumstances, the members of a limited liability company have equitable title—the power to compel transfer of legal title—to the company's property. *See AHF-Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831, 839 (Tex. 2012). Yet even if the Berrys could voluntarily dissolve Exbury Investments at any time and on any terms they choose,[7] those facts would not show a condition of defeasance: a pre-existing understanding that the Berrys would dissolve Exbury Investments on specific terms when a certain condition occurred. Accordingly, there is no evidence—much less conclusive evidence—of a condition of defeasance.

Because the Berrys did not conclusively establish the two requirements of a pretended sale, the trial court erred in granting summary judgment declaring the conveyance from the Berrys to Exbury Investments void and rejecting Paull &

---

[6] The Berrys argue that Paull & Partners waived the argument that the Berrys did not establish a condition of defeasance because Paull & Partners did not make this argument in its summary judgment response. But as just explained, the burden was on the Berrys. Although Paull & Partners' response did not include this argument, "[s]ummary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *Univ. MRI & Diagnostics*, 497 S.W.3d at 659 n.2 (citations omitted).

[7] Whether the Berrys could do so is not clear because they did not include the company agreement in the record.

Partners' counterclaims. We sustain Paull & Partners' first issue.

## III. The trial court erred in ordering forfeiture of principal and interest.

In its second issue, Paull & Partners argues the trial court erred in granting summary judgment on the Berrys' request for forfeiture of the principal and interest owed under the note. Although our conclusion that fact issues exist regarding whether the conveyance was a void pretended sale is a sufficient basis for reversing the summary judgment, the parties have fully briefed whether forfeiture is a proper remedy for a pretended sale. We therefore address that issue in the interest of judicial economy to provide guidance to the trial court on remand. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex. 1997); *Clay Exploration, Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 803 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

### A. The non-movant may raise a legal sufficiency challenge for the first time on appeal.

The Berrys first argue that Paull & Partners waived its second issue by failing to raise it in response to the motion for partial summary judgment. We disagree. As previously stated, the Berrys bore the burden of proving as a matter of law that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law on their claims. Tex. R. Civ. P. 166a(c); *Univ. MRI & Diagnostics*, 497 S.W.3d at 659 n.2. A non-movant who fails to file a response to a motion for summary judgment may still challenge on appeal "the legal sufficiency of the grounds presented by the movant." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 512 (Tex. 2014). We conclude that Paull & Partners may argue for the first time on appeal that the Texas Constitution does not permit forfeiture as a remedy for a pretended sale because this argument challenges the legal sufficiency of the grounds presented in the motion for partial summary judgment.

17

*See id.* (non-movant could raise issue of failure of acceptance of all material terms in an offer for first time on appeal because movant had burden of establishing acceptance to prove right to summary judgment).

**B.     There is no independent cause of action for forfeiture under the Texas Constitution.**

In their motion for summary judgment, the Berrys sought forfeiture under Article XVI, Section 50(a)(6)(Q)(x).  Section 50(a)(6) states in pertinent part as follows:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
>
> * * *
>
> (6) an extension of credit that:
>
> * * *
>
> (Q) is made on the condition that:
>
> * * *
>
> (x)  except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by [taking specified action to cure failure].

Tex. Const. art. XVI, §50(a)(6)(Q)(x).  The trial court relied on this provision in ordering that Paull & Partners forfeit principal and interest owed to it under the promissory note.[8]

---

[8] The Berrys raise for the first time in their brief the forfeiture provision contained in section 50(a)(6)(Q)(xi).  They did not raise this provision in their motion for summary judgment and thus cannot do so on appeal.  *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993);

The Supreme Court of Texas has addressed the forfeiture remedy on multiple occasions in recent years and held that section 50(a)(6)(Q)(x) does not provide an independent cause of action for forfeiture of principal and interest owed on a loan. *See Kyle v. Strasburger*, 522 S.W.3d 461, 466 (Tex. 2017) (per curiam); *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 551 (Tex. 2016) ("The forfeiture provision in section 50(a)(6)(Q)(x) does not create a constitutional cause of action to access that remedy and must be litigated in the context of the borrower's loan agreement."); *Garofolo v. Ocwen Loan Serv., L.L.C.*, 497 S.W.3d 474, 478-79 (Tex. 2016). Instead, section 50(a)(6) prescribes the terms and conditions that must be stated in home-equity loans in order for a lender to foreclose a lien on the homestead. As the court explained in *Garofolo*:

> As to constitutional rights, section 50(a) creates but one: freedom from forced sale to satisfy debts other than those described in its exceptions. . . . They only assume constitutional significance when their absence in a loan's terms is used as a shield from foreclosure. . . . [J]ust as the terms and conditions in section 50(a)(6) are not constitutional rights unto themselves, nor is the forfeiture remedy a constitutional remedy unto itself. Rather, it is just one of the terms and conditions a home-equity loan must include to be foreclosure-eligible.

497 S.W.3d at 478-79.

In addition, the court has noted the distinction between a lien and the extension of credit it secures, explaining in *Kyle* that "section 50(a) 'does not directly create, allow, or regulate home-equity lending,' nor does it prohibit loans that do not comply with its requirements. . . . Rather, section 50(a) 'simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default.'" *Kyle*, 522 S.W.3d at 465 n.7 (quoting *Garofolo*, 497

---

*Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 615 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The Berrys may, however, raise this provision on remand.

19

S.W.3d at 478). Where there is no contractual or other legal right to forfeiture, the remedy for a constitutionally non-compliant homestead loan is not an independent cause of action under the Constitution for forfeiture of principal and interest. The remedy is protection from forced sale of the homestead by declaring the lien invalid. *See id*. The trial court erred in declaring forfeiture of all principal and interest due under the loan. *See id.* at 465. We sustain Paull & Partners' second issue.

## CONCLUSION

Having concluded that the trial court erred in granting summary judgment for appellees, we sustain appellant's two issues and reverse the trial court's judgment. We remand the cause to the trial court for further proceedings.


/s/     J. Brett Busby
       Justice


Panel consists of Justices Boyce, Busby, and Brown.