# Supreme Court of Texas

## No. 21-1021

MSW Corpus Christi Landfill, Ltd.,

*Petitioner*,

v.

Gulley-Hurst, L.L.C.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**PER CURIAM**

This case concerns the correct calculation of damages when (1) a buyer breaches a real estate contract (2) after the seller has fully performed, and (3) the value of the property at the time of the breach exceeds the contract price. Because the trial court incorrectly instructed the jury to calculate the seller's "benefit of the bargain" damages as the difference between the market price—rather than the contract price— and what the seller received, we affirm the trial court's judgment notwithstanding the verdict (JNOV) deleting the jury's award of these damages. Additionally, because the seller did not adequately prove the foreseeability of its consequential "lost opportunity cost" damages, we

reverse that portion of the judgment and render a take-nothing judgment as to those damages.

**I**

In 2011, Gulley-Hurst, L.L.C. (GH) sold a one-half interest in a landfill it owned to MSW Corpus Christi Landfill, Ltd. for $7,500,000. MSW financed the transaction by executing a promissory note payable to GH for $3,500,000 (the $3.5 Million Note) and acquiring $5,000,000 in loans from AmeriState Bank (the $5 Million Loan). The parties entered a landfill operating agreement, which provided that MSW would operate the landfill and pay GH fifty percent of the net operating income.

Following some disagreements, MSW and GH entered into a Mediated Settlement Agreement, which allowed MSW to purchase GH's remaining one-half interest in the landfill within 120 days of the Settlement Agreement's execution. If MSW did not purchase GH's one-half interest by the 120-day deadline—that is, by September 24, 2015—MSW was required to sell its one-half interest back to GH.

MSW did not purchase GH's one-half interest by the deadline. As a result, MSW was required to "provide clear title" to GH by September 24, 2015, and GH was required to refinance the $5 Million Loan and write off the $3.5 Million Note by January 23, 2016. Thus, MSW was the seller and GH was the buyer in this transaction, which gave rise to the suit before us.

MSW fulfilled its requirements and conveyed the property to GH. GH wrote off the $3.5 Million Note but did not timely refinance the $5 Million Loan, though there is evidence it made the payments

2

required under the loan.[1]  MSW sued GH, and the trial court granted several of GH's motions for traditional summary judgment, disposing of MSW's claims except its claim for breach of contract due to GH's failure to refinance the $5 Million Loan from AmeriState Bank.

By the time of trial, the value of the landfill had appreciated significantly.[2]  A jury awarded MSW two types of damages: (1) lost "benefit of the bargain" damages of $10.235 million and (2) lost "opportunity cost" damages of $372,484.70.  The trial court had instructed the jury to calculate MSW's benefit of the bargain damages as the difference between the market value of the property at the time of the breach (which some evidence showed was $17.735 million) and the contract price ($7.5 million).  After the jury's award, the trial court granted GH's motion for JNOV, stating: "I did not submit the proper measure of damages to the jury."  In its judgment, the trial court reduced MSW's benefit of the bargain damages to $0.

Regarding MSW's lost opportunity cost damages, the jury heard expert testimony that GH's failure to refinance the $5 Million Loan for MSW prevented MSW from receiving another loan, the proceeds of which MSW could have invested at a return of $372,484.70.  The trial

---

[1] According to GH, "[s]ince assuming operation of the Landfill in August 2013, [GH] has made all installment payments required under the [$5 Million Loan]," has "timely paid all obligations owing to AmeriState Bank by MSW, and neither MSW nor any of its individual guarantors has been required to make any payments in connection with the [$5 Million Loan]."

[2] The 2015 Settlement Agreement valued MSW's one-half interest in the landfill at $7.5 million.  By the time of trial, MSW's expert testified that a June 1, 2016 appraisal estimated the landfill had a market value of $35.47 million, making MSW's half interest worth $17.735 million.

court rendered judgment on that portion of the jury's verdict, awarding MSW $372,484.70 in lost opportunity costs.

The court of appeals affirmed, ___ S.W.3d ___, 2021 WL 4898080, at *5-6 (Tex. App.—Corpus Christi–Edinburg Oct. 21, 2021), and the parties petitioned this Court for review. MSW seeks to have the benefit of the bargain damages reinstated, while GH petitions to have the lost opportunity cost damages deleted. We agree with GH on both points: MSW's benefit of the bargain damages were incorrectly calculated and are $0 as a matter of law,[3] and MSW did not sufficiently prove the foreseeability of its lost opportunity cost damages. Therefore, we affirm the court of appeals' judgment in part, reverse in part, and render judgment that MSW take nothing.[4]

## II

The general rule for measuring benefit of the bargain damages is to calculate the difference between what was promised and what was received. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) ("Benefit-of-the-bargain damages, which derive from an expectancy theory, evaluate the difference between the value that was represented and the value actually received."); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998)

---

[3] Besides defending the jury's award of damages in excess of the contract price, MSW makes no other argument and does not request any other amount of money for benefit of the bargain damages.

[4] We echo, however, the court of appeals' caution: GH remains obligated to refinance the $5 Million Loan according to the terms of the Settlement Agreement. Nothing in this opinion shall be construed to absolve GH of this obligation. Moreover, nothing herein shall be construed as restricting MSW's right to bring a separate suit if GH fails to comply with this obligation.

4

("[T]he benefit-of-the-bargain measure computes the difference between the value as represented and the value received."). Although courts have noted that "[w]hen the breached contract is for real estate, the measure of [the seller's] damages is the difference between the contract price and the property's market value at the time of the breach," *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.), this formula applies only when the value of the property has remained the same or decreased after the purchaser's breach, leaving the seller unable to receive the expected value of the contract. *See, e.g.*, *id.* at 138, 140. When the property's market value at the time of breach *exceeds* the contract price, the correct measure of benefit of the bargain damages is the difference between the promised contract price and what the seller received.

Policy and precedent compel this conclusion. The purpose of benefit of the bargain damages is to place the seller "in the same economic position he would have been in had the contract been performed." *Id.* at 140. Thus, a party "generally should be awarded neither less nor more than his actual damages." *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952). Permitting a seller to recover more than the contract price would place him in a better economic position than had the contract been performed. Worse, this windfall would come at the buyer's expense.

Conversely, calculating benefit of the bargain damages as the difference between what the seller expected and what she received causally connects the seller's compensation to the buyer's breach. *See Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186

5

(Tex. 2022) (noting breach must cause damages). The breach cost the seller the previously agreed-upon contract price, not the property's market value. *See Stewart*, 245 S.W.2d at 486 ("The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage *actually* sustained." (emphasis added)). The seller lost the opportunity to sell the property at market value not because of the buyer's actions, but because the seller decided to contract with the buyer for a lower price.

Finally, this measure brings the calculation of real estate damages in line with similar fact patterns outside the real estate context. *See, e.g.*, *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 834 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding that "the sum contracted for by the parties" was the appropriate damages measure when partnership interest increased in value after seller's conveyance and buyer's breach (quotation marks omitted)).

Here, had the contract been fully performed, MSW would have received $7.5 million for its ownership interest in the landfill—not $10.235 million. As MSW only expected $7.5 million, the damages to which MSW is entitled are the difference between $7.5 million and what MSW received. MSW received $3.5 million when GH wrote off the Note, and GH made payments on the $5 Million Loan. In addition, as the court of appeals noted, GH remains obligated to refinance that Loan, and MSW requested no other measure of damages. *See* 2021 WL 4898080, at *5 n.1.

In arguing for a different measure, MSW conflates its economic position absent *the contract* with its economic position absent *GH's*

6

*breach*. As expectation damages compare a party's current position to the position it would occupy had the contract been fully performed—not had there been no contract at all—MSW's reliance on its economic position absent the contract is beside the point. Additionally, MSW did not "lose" the opportunity to sell its interest at $10.235 million *because of* GH's breach. MSW lost that opportunity because it agreed to sell its interest to GH for $7.5 million. Because the jury incorrectly calculated MSW's benefit of the bargain damages as the difference between the *market* price—rather than the contract price—and what MSW received, we affirm the JNOV deleting the jury's award of these damages.

### III

The jury awarded MSW lost opportunity cost damages based on expert testimony that GH's failure to refinance the $5 Million Loan prevented MSW from receiving another loan, the proceeds of which MSW could have invested at a return of $372,484.70. MSW's damages from its inability to invest in a new loan are consequential damages. *See Signature Indus. Servs.*, 638 S.W.3d at 186. A plaintiff may recover consequential damages only if "the parties contemplated at the time they made the contract that such damages would be a probable result of the breach." *Id.* (quoting *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998)). And to find liability for consequential damages resulting from the breach of a loan commitment, we have noted that "the lender must have known, at the time the commitment was made, the nature of the borrower's intended use of the loan proceeds." *Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894, 903 (Tex. 2011).

7

MSW makes the same argument as the plaintiffs in *Basic Capital*: GH's breach prevented MSW from receiving, investing, and reaping profits from a loan. But MSW has not met *Basic Capital*'s foreseeability standard. In particular, MSW does not cite any evidence that GH knew at the time the Settlement Agreement was executed that MSW intended to use the refinancing proceeds to obtain another loan, the nature of MSW's intended use of the second loan, or that MSW would be unable to secure alternative financing if GH breached its commitment to refinance MSW's original loan. Therefore, MSW has not shown that the damages awarded based on GH's breach were reasonably foreseeable. Consequently, we reverse the portion of the court of appeals' judgment affirming the award of lost opportunity cost damages.

**IV**

MSW's briefing raises several other issues, requesting that this Court (1) reverse the portion of the court of appeals' judgment affirming summary judgment against MSW on its claims for declaratory judgment and trespass to try title, and either remand or render judgment that MSW did not convey title; (2) remand the case to the trial court for a lost-profits determination based on the landfill's accrued profits after MSW transferred the deed to GH; or—failing both—(3) rescind the parties' contract. We address these additional issues in turn.

First, MSW argues it did not convey its one-half ownership interest in the landfill to GH. MSW contends that a deed conveys an interest only if delivered with the intent that it become operative as a conveyance. MSW argues it did not intend to convey its interest until GH complied with its obligations under the Settlement Agreement. As

8

GH did not comply with the Settlement Agreement's terms, MSW did not intend to convey its interest to GH, and thus MSW did not convey the interest.

The summary-judgment record does not support MSW's assertions that it did not intend to transfer title to GH. The summary-judgment evidence supporting a party's position must be attached to the motion for summary judgment or the nonmovant's response. *See* TEX. R. CIV. P. 166a(c). In its responses to GH's motions for partial summary judgment on MSW's claims for trespass to try title and to quiet title, MSW did not argue that it lacked intent to transfer. And the summary-judgment evidence regarding MSW's claim for declaratory judgment does not raise a genuine issue of material fact to support MSW's contention that, when MSW provided clear title of its interest to GH by special warranty deed, MSW did not intend to convey that interest.

Evidence that a deed has been signed, delivered, and recorded gives rise to a presumption that the grantor intended the deed to become operative as a conveyance. *Paull & Partners Invs., LLC v. Berry*, 558 S.W.3d 802, 811 (Tex. App.—Houston [14th Dist.] 2018, no pet.). This presumption may be overcome if the facts and circumstances surrounding the execution of the deed raise a question of fact regarding whether the grantor intended to divest himself of title. *Id*. But here, the surrounding circumstances reinforce rather than undermine this presumption.

The Settlement Agreement does not show that the conveyance was conditioned on GH's first fulfilling its obligations. Indeed, the

9

Settlement Agreement *requires* MSW to provide GH clear title up to three months *before* GH fulfills its obligations. Moreover, emails exchanged between MSW's and GH's attorneys show that MSW knew GH intended to record the deed rather than hold it in escrow until GH fulfilled its obligations, but MSW delivered the deed anyway. MSW has not offered evidence that could support a finding that it did not convey its interest in the landfill when it provided clear title to GH under the deed. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.) ("[A] secret or undisclosed intention of the grantor not to divest himself of title will not prevent a duly executed and delivered deed from taking effect."). Accordingly, this issue provides no basis for reversal.

Next, MSW argues that because it never conveyed its one-half interest in the landfill, it owned fifty percent of the landfill and thus is entitled to fifty percent of the landfill's profits that GH has accrued since MSW transferred the deed to GH. As we hold that MSW conveyed its ownership in the landfill when it transferred the deed, this issue likewise provides no basis for reversal.

Finally, regarding rescission of the Settlement Agreement, we agree with the court of appeals that MSW did not preserve its request for this remedy. As the court of appeals noted:

> MSW claims that "[t]he trial court rejected its claim for rescission of the [Settlement Agreement]," . . . [but it] does not cite the record wherein it requested the relief of rescission. *See* TEX. R. APP. P. 38.1(i). MSW acknowledges that the trial court made a dispositive ruling pre-trial on its rescission claim; however, MSW does not share where in the record we may review that ruling.

10

2021 WL 4898080, at *13. MSW's briefing in this Court similarly lacks citations to a request for rescission in the trial court or a ruling by that court. Moreover, a decision not to grant rescission is subject to review for abuse of discretion. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 429 (Tex. 2008); *Davis v. Estridge*, 85 S.W.3d 308, 310 (Tex. App.—Tyler 2001, pet. denied). And the party complaining "has the burden to bring forth a record showing such abuse." *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987). "Absent such a record, the reviewing court must presume that the evidence before the trial judge was adequate to support the decision." *Id*. Given the dearth of information proffered by MSW, we presume that the trial court had adequate evidence to justify its decision to deny rescission.

## V

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant the petitions for review, affirm the portion of the court of appeals' judgment affirming the JNOV as to the benefit of the bargain damages, reverse the portion of the judgment affirming the award of lost opportunity cost damages, and render a take-nothing judgment as to those damages.

**OPINION DELIVERED:** March 24, 2023